## ELI BURHANS v. JOSIAH C. HUTCHESON, *et al.*

| 25 | 625 |
|----|-----|
| 40 | 167 |
| 40 | 693 |
| 25 | 625 |
| 47 | 80 |
| 25 | 625 |
| 49 | 551 |
| 25 | 625 |
| 57 | 693 |
| 57 | 747 |
| 25 | 625 |
| 68 | 274 |

1. NOTE AND MORTGAGE, *When Payment of, No Discharge of.* Where a mortgage on real estate is given to secure the payment of a negotiable note, and before the maturity of the note the note and mortgage are transferred by indorsement thereon to a *bona fide* holder, the mortgagor, although having no notice whatever of such assignment and transfer, cannot thereafter pay off the note or mortgage to the mortgagee so as to defeat the real owner and holder thereof from recovering. Such a holder takes the mortgage as he did the note.

2. PAYMENT TO PAYEE OF NOTES AND MORTGAGE; *Recovery by Bona Fide Holder.* H. executed to B., on February 25, 1873, two negotiable promissory notes payable to B., or order, for $500 each, one payable November 1, 1874, and the other November 1, 1875, with interest at the rate of seven per cent. per annum. To secure the payment of the notes, H. and wife, on October 20, 1873, executed to B. a mortgage on real estate. Before the maturity of either of said notes, they were duly assigned by indorsement thereon to one E., who is the *bona fide* owner and holder of the notes and mortgage. On the 9th of March, 1875, without the knowledge or consent of the owner and holder of the notes, H. and wife executed to the original payee in full payment and satisfaction of the notes a conveyance of seventy acres of the land embraced in the mortgage, supposing such mortgagee to be the owner of the notes and mortgage, upon his statement that the notes were in his possession, at his home, and that he would destroy them. *Held,* That as the payee was not the holder of the notes and mortgage, and had no possession of them, and was not entitled to receive money or other property in payment therefor, the conveyance of the land to him did not pay or discharge the notes or mortgage, or prevent the *bona fide* holder from recovering thereon.

3. MORTGAGE, *How not Discharged.* After certain negotiable notes, payable to the order of B., and a mortgage on real estate executed by H. to secure the same, had been duly transferred by indorsement thereon before maturity, the mortgagor, without actual notice of such transfer, made a conveyance of land to the mortgagee to pay the notes and satisfy the mortgage, without the knowledge or consent of the real holder and owner of the notes and mortgage; and thereafter the mortgagor and mortgagee went together to the office of the register of deeds in the county where the mortgage was recorded, and procured the register to write a discharge and satisfaction of the mortgage on the margin of the record, which was signed by the mortgagor and attested by the register of deeds. *Held,* That such entry, not being signed by the mortgagee or his attorney, assignee or personal representative, was no discharge or release of record of the mortgage pursuant to the statute, and at most,

40 — 25 KAS.

as to third parties, was a mere written statement on the part of the mortgagor in favor of his own interest, that he had paid the mortgage, which could not prejudice the rights of the *bona fide* holder of the notes secured by such mortgage. (Comp. Laws of 1879, ch. 68, § 5.)

4. ASSIGNMENT OF MORTGAGE, *Need not be Recorded, When.* The *bona fide* holder of negotiable paper, transferred to him by indorsement thereon before maturity, and secured by a real-estate mortgage, need not record the assignment of the mortgage, or bring home to the mortgagor actual notice of such assignment, in order to protect himself against payments made after the assignment without his knowledge or consent by the mortgagor to the mortgagee.

5. ASSIGNMENT OF MORTGAGE, *Record of.* Sec. 3, ch. 68, Comp. Laws of 1879, may be interpreted as having application to mortgages standing alone, or those securing debts and notes of a non-negotiable character only. With this interpretation the statute is not nugatory, and has ample room for operation, without being extended to mortgages given to secure negotiable paper transferred by indorsement thereon before maturity.

*Error from Douglas District Court.*

ACTION brought by *Burhans* against *Hutcheson* and four others, upon two promissory notes and a mortgage. Trial by the court at the October Term, 1878, and judgment for the defendants. The plaintiff brings the case here. The opinion states the facts.

*B. J. Horton,* for plaintiff in error.

*S. O. Thacher,* for defendant in error Farwell; *John Hutchings,* for defendant in error Willard.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by plaintiff against the defendants to recover upon two negotiable promissory notes, and to foreclose a mortgage upon real estate given to secure their payment. The case was submitted to the court without a jury, and the findings of fact are substantially as follows:

On the 25th day of February, 1873, J. C. Hutcheson executed and delivered to Taylor Brandon two promissory notes, payable to Brandon or order, for the sum of $500 each — one of them payable November 1, 1874, and the other

November 1, 1875, with interest at the rate of seven per cent. per annum. On the 20th day of October, 1873, to secure the payment of the notes, J. C. Hutcheson, and E. J. Hutcheson, his wife, executed and delivered to Brandon a mortgage on the southeast quarter of section 12, and the east half·of the northwest quarter of section 13, in township 15, range 18, east, lying in Douglas county. The mortgage was duly recorded on the 20th day of October, 1873, in the office of the register of deeds of Douglas county. Before the maturity of either of said notes, they were duly assigned by the indorsement thereon of the name of the payee, Taylor Brandon, and delivered to Eli Burhans, the plaintiff in this action, who has ever since been the holder and owner of them. The notes are fully due and unpaid, (except $65 paid October 20, 1873,) other than as hereinafter alleged. On the 9th day of March, 1875, J. C. Hutcheson and wife executed and delivered to Taylor Brandon a warranty deed, (recorded August 10, 1875,) conveying to Brandon a portion of the mortgaged premises, to wit, the north sixty acres of the southeast quarter of section twelve, and the west quarter of the east quarter of the northwest quarter of section thirteen, in township fifteen, range eighteen; and it was agreed between Hutcheson, mortgagor, and Brandon, mortgagee, at the time, that the conveyance of the seventy acres should stand in full payment and satisfaction of the two $500 notes and mortgage hereinbefore described as having been given by Hutcheson to Brandon. At the time of the execution of the deed to the seventy acres of land, Brandon represented to Hutcheson that he was in possession of the notes and mortgage from Hutcheson to himself, and that they were at his house, about five miles from Lawrence, and that he would destroy them or bring them to him. Hutcheson, at that time, had no· knowledge or information that Brandon had transferred the notes and mortgage to plaintiff. They went together at the same time to the office of the register of deeds for Douglas county, and procured the register to write a discharge of the mortgage on the margin of the record in words and figures as follows: "For value received, I hereby acknowledge full payment and satisfaction of the within mortgage, and discharge the same of record. Witness my hand, this 9th day of March, 1875.—J. C. HUTCHESON. Attest: D. W. LITTELL, Register of Deeds;" which was signed by J. C. Hutcheson, he and Brandon believing that to be the proper way to execute a discharge. Hutcheson supposed the notes and mortgage destroyed until about the com-

mencement of this action, not having seen them since October 20, 1873. At the time of the conveyance of the seventy acres on March 9, 1875, by Hutcheson to Brandon, Hutcheson was in the actual possession, under a warranty deed, of the whole two hundred acres, included in the mortgage of October 20, 1873, and has continued to occupy with his family the remaining one hundred and thirty acres to the time of the trial, being the sole occupant thereof, and cultivating the same. Taylor Brandon went into possession of the seventy acres deeded to him March 9th, 1875, and continues to occupy it. At the execution of the deed from Hutcheson to Brandon, March 9, 1875, of the seventy acres, Brandon was not the owner of, nor in possession of, the notes or mortgage, or either of them, and did not and never has produced them, or either of them, though often requested and frequently promising to do so; but at that date the plaintiff, Eli Burhans, was the owner and in possession of the notes and mortgage, and had no knowledge of the agreement between Hutcheson and Brandon for the conveyance of the seventy acres in payment or satisfaction of the notes and mortgage, or of any agreement, or of any attempt to discharge the mortgage on the record. Upon the 31st day of July, 1875, Hutcheson and wife executed a mortgage upon the one hundred and thirty acres remaining to them, after deeding the seventy acres to Brandon, to the Sullivan savings institution, to secure the payment of $1,000 and interest at twelve per cent. per annum; the mortgage was recorded on the same day.    Upon the 2d day of October, 1877, Hutcheson and wife executed, as satisfaction of the mortgage to the Sullivan savings institution, a quitclaim deed to the one hundred and thirty acres, to defendant John W. Farwell, and the deed was recorded on the third day of October, 1877, and Farwell paid the full value of the land in good faith, and the Sullivan savings institution acted in good faith.    Brandon, upon the 4th day of October, 1875, executed a mortgage upon the seventy acres deeded to him by Hutcheson and wife to D. L. Hoadley, to secure a note of the sum of $300, and interest at 12 per cent. per annum, dated also October 4th, 1875, given for money loaned by Hoadley to Hutcheson; the mortgage was recorded on the same day; the note and mortgage were subsequently and before maturity, for value received, indorsed and delivered to Wm. B. Willard, who is now the owner and holder thereof, and there is now due on the note and mortgage, from Brandon to Wm. B. Willard, the sum of three hundred and

twenty-two and $\frac{80}{100}$ dollars, and a further sum of fifty dollars as an attorney's fee for the foreclosure of said mortgage.

Upon the foregoing findings, the trial court decided the notes set forth in the petition to be paid and the mortgage null and void; that Wm. B. Willard was entitled to the first lien on the 70 acres deeded by Hutcheson to Brandon on March 9th, 1875, and that John L. Farwell was the legal owner of the 130 acres deeded him on October 2d, 1877.

As the entry upon the book of mortgages in the office of the register of deeds of Douglas county on March 9th, 1875, was signed by the mortgagor, instead of the mortgagee, or any party representing him, such entry was, as to third persons, a mere written statement on the part of the mortgagor in favor of his own interest, that he had paid the mortgage of October 20th, 1873, given by him to secure the notes delivered to Brandon, but did not discharge or release of record, pursuant to the statute, such mortgage. (Comp. Laws of 1879, ch. 68, § 5.)

The principal question, therefore, in the case is, whether the conveyance of the 70 acres of land by Hutcheson to Brandon on March 9th, 1875, was a payment of the notes and a valid satisfaction of the mortgage, no actual notice having been brought home to the former of the assignment before maturity of the notes and mortgage to plaintiff. The court below seems to have held the conveyance a full payment and satisfaction of the mortgage. From the conclusions of law stated, the court must have decided that where a negotiable note is secured by mortgage on real estate, and both are assigned by indorsement thereon before maturity to a *bona fide* purchaser, the mortgage is taken subject to all payments made by the mortgagor to the mortgagee at any time before actual notice to the mortgagor of such assignment. Counsel for defendants claim this to be the law, and have cited many respectable authorities in support thereof. We think the doctrine thus announced not sustained by reason or sound policy, and if adopted it would be an unfortunate obstacle to commercial transactions so common in this state as the sale

and transfer of negotiable paper secured by real-estate mortgages, and that such a doctrine is not in accord with the previous decisions of this court controlling the principles of law applicable to negotiable paper secured by such mortgages. In this state, the common-law attributes of mortgages have been by statute wholly set aside, and the ancient theories concerning such mortgages demolished. The mortgage is a mere security, creating a lien upon the property, but vesting no title. The debt secured by the mortgage is the principal thing, and the mortgage the mere incident following the debt wherever it goes, and deriving its character from the instrument which evidences the debt. Here, the negotiable notes are the principal evidence of the debt, and the mortgage is merely ancillary; the mortgage follows the notes; whoever owns the notes, owns the mortgage. (*Chick v. Willets*, 2 Kas. 385; *Swenson v. Plow Co.*, 14 Kas. 387.) In the late case of *Carpenter v. Longan*, 16 Wall. 271, Mr. Justice Swayne, speaking for the court, says:

"The note and mortgage are inseparable. The former is essential, the latter is an incident. An assignment of the note carries the mortgage with it, while the assignment of the latter alone is a nullity. . . . All the authorities agree that the debt is the principal thing, and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same right in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid, the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action where no such relation of dependence exists."

Counsel for defendants say, that conceding the correctness of the general doctrine laid down in *Carpenter v. Longan*, supra, yet, the adoption of § 3, ch. 68, Comp. Laws of 1879,

has placed a legislative restriction upon the negotiability of all mortgages executed since its adoption, and that this statute throws upon the assignee of negotiable paper secured by real-estate mortgages, the burden of personal notification to the maker of the mortgage of the change of ownership, if he would cut off future payments to the mortgagee. Our attention is called to *Johnson v. Carpenter*, 7 Minn. 176, and to *Van Keuren v. Corkins*, 66 N. Y. 77, interpreting a statute like ours. In *Johnson v. Carpenter*, the mortgage is treated as a chose in action standing alone. In *Van Keuren v. Corkins*, the suit was upon a bond and mortgage, and it does not appear that the bond was negotiable. However, *Johnson v. Carpenter*, and the other authorities referred to in the same direction, are not satisfactory to us, or rather, they are not in harmony with the law of mortgages in this state. Section 3 speaks of the recording of the assignment of the mortgage, and does not by its terms refer to negotiable paper, and it seems to us a strained interpretation to hold its provisions applicable, where a debt is evidenced by a negotiable note, secured by mortgage upon real estate, when such mortgage is merely ancillary thereto, and follows the note wherever it goes, deriving its character from such instrument. A better interpretation, and one clearly more in accord with the law of mortgages in this state, is, that such section has reference only to a mortgage standing alone, or one securing debts and notes of a non-negotiable character. Under this interpretation, § 3 of the statute is not nugatory, but has ample room for operation. As Brandon had parted with all his interest in the notes and mortgage before accepting the conveyance from Hutcheson and wife, and had no interest therein at the time, such conveyance did not extinguish the mortgage held by plaintiff; nor was it necessary for the plaintiff to record an assignment of the mortgage to protect himself from the payment to the mortgagee. The notes and mortgage went together, and the mortgagor, having made the conveyance and payment without a surrender of the notes or the mortgage, did so at his peril.

The judgment of the district court will be reversed, and the case remanded with directions to enter judgment for plaintiff for the amount due him upon the notes, and for a foreclosure of his mortgage, in accordance with the views herein expressed.

All the Justices concurring.