INGRI OLSON v. NORTHWESTERN GUARANTY LOAN COMPANY.[1]

July 15, 1896.

Nos. 9629—(77).

**Assignment of Mortgage—Payment to Original Mortgagee.**

> Payment of the amount due upon a mortgage to the mortgagee by the mortgagor after the mortgage has been assigned, but without notice of the assignment by the mortgagor, will extinguish the mortgage. Johnson v. Carpenter, 7 Minn. 120 (176), followed.

**Same—Payment before Maturity—Good Faith.**

> Payment of a mortgage by the mortgagor to the mortgagee before maturity, with the accrued interest to day of payment, is no evidence of bad faith, nor is a want of good faith to be inferred because the mortgage was not produced at the time of the payment.

Action in the district court for Otter Tail county to obtain the satisfaction and discharge of record of a mortgage. Tabitha Lapsley and Mary Hazzard intervened, and from a judgment in their favor, entered in pursuance of the findings and order of Baxter, J., plaintiff appealed. Reversed.

*John P. Williams*, for appellant.

*C. E. Chapman*, for respondent intervenors.

BUCK, J.[2]   On June 5, 1888, William Rima executed a mortgage to the defendant, the Northwestern Guaranty Loan Company, on the real estate described in the complaint, situated in Otter Tail county, Minnesota, to secure the payment of his promissory note for $700, executed by him on that date, due in five years from the date thereof,

---

[1] Reported in 68 N. W. 100.     [2] Mitchell, J., absent, took no part.

with 7 per cent. interest, payable semiannually, and the said note was made payable at defendant's office in Minneapolis. On September 3, 1891, the said William Rima conveyed by warranty deed the real estate covered by this mortgage to the appellant, in which deed appellant assumed and agreed to pay the mortgage, and she has owned the real estate ever since. On September 10, 1888, the defendant sold and assigned the note and mortgage to the intervenors, and such assignment was lost by the intervenors, and no assignment was ever placed on record.

On March 3, 1893, Mr. Barrows, acting as the agent of the appellant, called at the office of the defendant at Minneapolis, and talked with S. M. Houghton, the vice president of defendant, about paying this mortgage. Mr. Houghton, after going to the books, told Mr. Barrows that the defendant had the Rima mortgage in the office, and that he could pay it, and that he would have to pay interest only to the day of such payment, and that he could send the money direct to defendant, or pay the same to defendant's agents, Lake & Lowry, at Fergus Falls, as was most convenient. Thereupon the appellant, through her agent, Mr. Barrows, did, on April 10, 1893, without any notice or knowledge that the mortgage had been assigned to intervenors, pay to Lake & Lowry $717.15 by his check to them on the First National Bank of Fergus Falls, that being the amount that was due on the mortgage on that day. The amount that would have been due at the maturity of the mortgage, to wit, June 5, 1893, is $724.50. Lake & Lowry accepted said check in payment of the same. Neither Lake & Lowry nor the defendant had the possession of the note and mortgage at the time of this payment. Lake & Lowry, on the day that Mr. Barrows paid this mortgage to them, sent their check to defendant at Minneapolis, drawn on the First National Bank of Fergus Falls, for the amount so paid them. Upon receipt of such check, the defendant notified Lake & Lowry that they had placed the same to their credit, and that the mortgage was held by parties in the east. The defendant deposited this check to its own credit in the Security Bank of Minnesota, and it was paid by the First National Bank of Fergus Falls April 13, 1893. The defendant afterwards checked out this money for various purposes for its own benefit. Lake & Lowry never informed appellant or her agent, Barrows, of the receipt of defendant's letter of April 12, 1893,

in which the defendant informed Lake & Lowry that they had placed the money to their credit, until after defendant's property had passed into the hands of a receiver.

In October, 1894, the appellant brought this action against the defendant to compel a satisfaction of this mortgage. The defendant put in no appearance. . The first time that the appellant ever knew that Tabitha Lapsley and Mary Hazzard claimed any interest in the mortgage was shortly before they intervened in the action. Upon trial they had judgment ordered in their favor, and from that judgment the plaintiff appeals.

The assignment of the note and mortgage from the Northwestern Guaranty Loan Company to Tabitha Lapsley and Mary Hazzard was never recorded. While such assignment is a conveyance, within the meaning of the recording laws of this state, yet by G. S. 1894, § 4183, it is expressly provided that

"The recording of an assignment of a mortgage shall not in itself be deemed notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them or either of them to the mortgagee."

This leaves the law unchanged as to the effect of payment. The loan company was the original mortgagee, and the only party with whom the plaintiff ever dealt as having an interest or right in the note and mortgage. It was from the defendant company that the plaintiff obtained the money, to whom the mortgage was given. In the absence of any notice, she would have a right to presume that the defendant still had the mortgage in its possession. As she had no notice, either actual or constructive, of the assignment, she had a right to pay the mortgage to the defendant itself, or its legally authorized agents, which she did. When Lake & Lowry transmitted the money to defendant, it had no authority from them to place the money to their personal credit, although it appears that defendant did so credit it. Subsequently defendant used the money for its own benefit. Lake & Lowry did not communicate any of these facts, of which they had knowledge, to the plaintiff, until after the loan company became insolvent. Houghton's official position in the company, and his being in its building, transacting business for it therein at the time of the conversation with Barrows, clothed him with an apparent authority to designate the persons to whom the mortgage

should be paid; and the defendant having received such payment in pursuance of the transaction with Houghton, and applied it to its own use, ratified the act of Lake & Lowry in receiving the payment, and the case stands as if payment had been made directly to the defendant, the mortgagee in the first instance.

The payment of the mortgage by the mortgagor to the mortgagee before maturity, with accrued interest to day of payment, is no evidence of bad faith; nor is a want of good faith to be inferred in such case because the mortgage was not produced at the time of payment. Foster v. Beals, 21 N. Y. 247; Van Keuren v. Corkins, 66 N. Y. 77. And a payment of the amount due upon a mortgage to the mortgagee by the mortgagor after the mortgage has been assigned, but without notice of the assignment by the mortgagor, will extinguish the lien of the mortgage. Johnson v. Carpenter, 7 Minn. 120 (176). Numerous authorities sustain the rule that the payment made by the mortgagor to the mortgagee upon a bond and mortgage, after an assignment thereof by the latter, when made in good faith, without notice, actual or constructive, of the assignment, is valid. Van Keuren v. Corkins, supra. Of course, the bond and mortgage are nonnegotiable instruments, and in some states this is the usual method of giving securities, without giving a negotiable note to secure them. In this state the more usual way is the giving of a mortgage, without a bond, to secure the negotiable note. The rule laid down in Johnson v. Carpenter has been the law of this state since the year 1862, and we do not feel disposed to depart from it.

The judgment is therefore reversed.

CANTY, J. (dissenting). I cannot concur in the foregoing opinion. The doctrine laid down in Johnson v. Carpenter, 7 Minn. 120 (176), is wholly out of joint with commercial usage. The rule that the negotiability of the note does not impart negotiability to the mortgage securing it is carried far enough in holding that, as against the assignee, the mortgagor may set up any defense which he had against the mortgagee while the latter held the note and mortgage, but that, if the mortgagee indorses away the note before maturity, the mortgagor pays him thereafter in his own wrong. If, while the mortgage is in the hands of the mortgagee, it is for any reason invalid, and in fact no mortgage, it is one thing to say that an indorsement of the

note will not impart validity to the mortgage.    It is quite another thing to say that a perfectly valid mortgage shall not follow the note of which it is the mere incident, but shall remain in the hands of the mortgagee, to be destroyed by the blind and heedless action of the mortgagor, when he insists on paying the wrong instrument.    There is a vast difference between imparting life to a dead thing and killing a live thing.    The majority cite, as authority for their position in this case, decisions from New York in cases where the mortgage secured nothing but a nonnegotiable bond, which is a very different matter.    See 1 Pingrey, Mortg. § 1004;  15 Am. & Eng. Enc. Law, 855, note 3;  Id. 860.    As far as I can discover, New York has never held that the same rule applies to the case of a negotiable note secured by a mortgage and indorsed and transferred before maturity. But in Trustees of Union College v. Wheeler, 61 N. Y. 88, 106, 107, the court intimated that it did not, and in Gould v. Marsh, 1 Hun, 566, the court held it did not.    In the cases of Hostetler v. Alexander, 22 Minn. 559,  Oster v. Mickley, 35 Minn. 245, 28 N. W. 710, and Smith v. Parsons, 55 Minn. 520, 57 N. W. 311, the defense of the mortgagor related to the inception of the note and mortgage;  and in the case of Watkins v. Goessler, supra, page 118, 67 N. W. 796, the assignment of the note and mortgage before maturity was a breach of trust, the assignee taking them in bad faith, in which case the subsequent assignment of them to the plaintiff therein did not cure it.    It seems to me that this court went far enough in these cases. In all of these cases it was simply held that an invalid, paid, or dead mortgage could not be validated or reinstated by the indorsement of the note, even though the mortgage was a mere incident of that note. But to hold that the mortgage is not such a mere incident, but can be paid separately and apart from the note, and without any regard to the possession of the same, is going very much further.

Neither does G. S. 1894, § 4183, have anything to do with the questions here discussed.    That section simply means that there must be something else besides the recording of the assignment of the mortgage to give the mortgagor notice.    This point is most effectually disposed of in Burhans v. Hutcheson, 25 Kan. 625, 631, where the court says:

"Counsel for defendants say that, conceding the correctness of the general doctrine laid down in Carpenter v. Longan, 16 Wall. 271, yet

the adoption of section 3, c. 68, Comp. Laws 1879, has placed a legislative restriction upon the negotiability of all mortgages executed since its adoption, and that this statute throws upon the assignee of negotiable paper secured by real-estate mortgages the burden of personal notification to the maker of the mortgage of the change of ownership, if he would cut off future payments to the mortgagee. Our attention is called to Johnson v. Carpenter, 7 Minn. 120 (176), and to Van Keuren v. Corkins, 66 N. Y. 77, interpreting a statute like ours. In Johnson v. Carpenter the mortgage is treated as a chose in action standing alone. In Van Keuren v. Corkins the suit was upon a bond and mortgage, and it does not appear that the bond was negotiable. * * * Section 3 speaks of the recording of the assignment of the mortgage, and does not by its terms refer to negotiable paper; and it seems to us a strained interpretation to hold its provisions applicable, where a debt is evidenced by a negotiable note, secured by mortgage upon real estate, when such mortgage is merely ancillary thereto, and follows the note wherever it goes, deriving its character from such instrument. A better interpretation, and one clearly more in accord with the law of mortgages in this state, is that such section has reference only to a mortgage standing alone, or one securing debts and notes of a nonnegotiable character. Under this interpretation, section 3 of the statute is not nugatory, but has ample room for operation."

In my opinion, the judgment appealed from should be affirmed.