Opinion of the court by
W. B. Grimes, who lives in Clark county, Kansas, on June 27, 1900, executed to Seigel-Sanders Live Stock Commission Company his negotiable promissory note for $11,111.23, due November 1st, 1900, with interest from maturity at the rate of 8 per cent. per annum. To secure the payment of this note, at the same time, he duly executed *Page 721 
a chattel mortgage to the payee of the note, on five hundred and twenty-six cattle, and this mortgage was filed in the office of the register of deeds of Clark county on July 12, 1900. This note was then assigned by the payee to the Geneseo bank.
On October 24, 1900, and after the note just described had been assigned to the Geneseo bank, Grimes executed to Seigel-Sanders Live Stock Commission Company two other notes, one for $7,033.24 and one for $7,000.00, due six months after date, and gave a chattel mortgage to the commission company on 633 head of cattle (which included the cattle described in the first mortgage) to secure these two notes, which were assigned to the Chicago Cattle Loan Company.
On November 24th, 1900, although the Siegel-Sanders Live Stock Commission Company had sold the note for $11,111.23 to the Geneseo bank, it, through its president, Frank Siegel, without any authority filed in the office of the register of deeds a pretended release, in which payment of the note was acknowledged.
On February 25th, 1901, the Chicago Cattle Loan Company caused its agent, a Mr. True, to examine the records of Clark county as to chattel mortgages against Grimes, and on this examination he found the record clear, except as to the mortgage held by his company, and so reported to it. On April 17, 1901, Grimes executed two other notes to Siegel-Sanders L. S. Com. Co., for $7,694.77 each, due October 27, 1901, and to secure the payment of these two notes, he, at the same time, executed a chattel mortgage on 606 of the cattle in question. These two notes were then sold to the National *Page 722 
Live Stock Bank of Chicago for $15,389.54, and it believed at the time it bought these notes that the mortgage securing them was a first lien on the cattle, and it secured this information through Mr. True, who personally examined the record. It is insisted that these notes were given as a renewal of the second set of notes taken by the Siegel-Sanders Co., but perhaps that is not material under our view of the law.
Grimes moved these cattle to Woodward county, Oklahoma, between April 25th and May 1st, 1901, without the knowledge or consent of either of the parties to this suit. They were seized by the Geneseo bank between the 19th and 20th of May, 1901, and the Chicago bank, within one year from the filing of the first mortgage in the office of the register of deeds of Clark county, Kansas, commenced this suit in replevin in the district court to recover possession of the cattle, claiming under the mortgage which was executed to the Siegel-Sanders L. S. Com. Co. on April 17th, 1901; and the Geneseo bank claiming under the mortgage dated June 27th, 1900, which was released by the Siegel-Sanders L. S. Com. Co. after its assignment to the Geneseo bank. There is practically no dispute as to the facts; and the trial court expressly held that both the parties to this action acted in good faith. It was agreed that the court should take into consideration all of the laws of Kansas, the same as though they had been formally introduced in evidence and copied into the record; and as each party is still insisting upon this agreement, this court will adhere to it.
A number of questions are argued in the briefs, and while we will not discuss all of them, we have considered *Page 723 
them all, and will discuss those which we think are controlling.
The note dated June 27th, 1900, was assigned to the Geneseo bank for value in the ordinary course of business long before maturity, and this assignment of the note carried the security with it, without the execution of a formal assignment of the mortgage. (Burhans v. Hutcheson, 25 Kans. 625; Mutual BenefitLife Insurance Company et al. v. Huntington, 57 Kans. 744, 48 P. 19; Swift v. Bank of Washington, 104 Fed. 643; Daniels on Negotiable Instruments, vol. 2, sec. 655; Jones on Chattel Mortgages, sec. 503.) And in the case of Carpenter v. Logan, 16 Wall. 271, the supreme court of the United States said:
"All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion which exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action, where no such relation of dependence exists."
It follows therefore that the Siegel-Sanders Live Stock Commission Company had no legal or moral right to release the mortgage securing the note which it had assigned to the *Page 724 
Geneseo bank. And the execution and filing of the purported release was a fraud upon that bank. The bank never appointed the Siegel-Sanders Company its agent to collect this money, nor did that company have any express or implied authority to do so, or to release the chattel mortgage which secured the same.
It is true that the Siegel-Sanders Company is not a party to this suit, and that it has had no opportunity to be heard or make any explanation as to its connection with the transaction; still the court must take the record as presented, and determine the rights of the parties therefrom; and even if that company thought it had a right to release the mortgage, and intended to apply the proceeds of the second loan to the payment of the first, its belief in the premises would not change the law, nor do its acts in failing to apply the proceeds of the second loan to the payment of the first argue good intentions. But it is insisted that it is immaterial as to whether the Siegel-Sanders Company acted in good faith, or had authority for executing the release of the Geneseo mortgage; that it was the duty of the plaintiff in error when it bought its note from the Siegel-Sanders Company to also take and file an assignment of the mortgage securing it, and that, by not doing so, the Geneseo bank was guilty of negligence, and that the Chicago bank having bought on the record as it found it, has a better right than the appellant, and counsel cites a long list of cases to support this position; in fact, the array is so formidable, were it to be conceded that the statutes of Kansas require the transfer of a chattel mortgage given to secure the payment of a negotiable promissory note to be evidenced by a formal assignment *Page 725 
duly filed or recorded, we would readily admit this position, if the release filed were in form and executed as required by law; but after an examination of the laws of Kansas we are fully persuaded that they neither contemplate nor require it; and it is universally admitted that the registration of an assignment of a mortgage is wholly the creature of statute, and if the statute does not require an assignee to record his assignment, he is not guilty of negligence in failing to do so. (Jones on Mortgages [5th Ed.], vol. 1, sec. 956.) The formal assignment and transfer of the note is all that is necessary. The appellee, in support of his position, calls attention to section 9 of chapter 120, vol. 2, of Webb's Annotated Statutes of Kansas, which relates to the release of chattel mortgages, and is as follows:
"When any mortgage of personal property shall have been fully paid or satisfied, it shall be the duty of the mortgagee, his assignee or personal representative, to enter satisfaction or cause satisfaction thereof to be entered of record in the same manner as near as may be, and under the same penalty for a neglect or refusal as provided in the case of the satisfaction of mortgages of real estate."
This section has been commented upon by the supreme court of Kansas, but, as applied to the question now under consideration, we have been unable to find any decision of that state which can be considered as an interpretation of it. In the case of Thomas v. Reynolds, 29 Kans. 304, Justice Brewer said that the statute in question had reference to one who had record title, and that the purpose of the statute was to clear the record title of the property, and that, where a mortgage has been assigned, no action, under the statutes, will lie against the assignee to recover the penalty *Page 726 
without proof of an assignment of record. The penalty referred to is a penalty of $100.00 provided for in the chapter on real estate mortgages, to be recovered against a mortgagee or his assignee for failure to release a mortgage after the same has been paid. It reads as follows:
"When any mortgage of real property shall have been satisfied, it shall be the duty of the mortgagee or his assignee, immediately on demand of the mortgagor, to enter satisfaction, or cause satisfaction of such mortgage to be entered, of record; and any mortgagee or assignee of such mortgage who shall neglect or refuse to enter satisfaction of such mortgage, as is provided by this act, shall be liable to damages to such mortgagor, or his grantee or heirs, in the sum of one hundred dollars, to be recovered in a civil action before any court of competent jurisdiction."
The defendant was the assignee of a chattel mortgage, and, after payment, he refused to release it, and the court, the question being raised and urged, simply held that the statute referred to one holding record title. The court did not consider as to whether the assignee of a chattel mortgage should place his assignment of record; that question was not before the court, and the mere fact that it disposed of all the questions raised is no indication as to how it would have held on the one question, which might be decided either way so far as any principle announced in the opinion was concerned. The court in that case was considering who was liable, under the statute, for failure to execute a release of a chattel mortgage, and not whether the statute required an assignment of such a mortgage to be filed or recorded. For the sake of argument it may even be admitted that the opinion assumes that an assignment may be placed of record; still that would not be controlling, because that question *Page 727 
has never been decided in Kansas, nor was it in any way suggested in the record; and the court decided the case as presented, leaving questions not raised for future consideration. The other case, Parkhurst v. First National Bankof Clyde (Kans.), 35 P. 1116, follows the rule announced in the case of Thomas v. Reynolds, supra, and nowhere even refers to the questions before us.
The only provision of the statutes of Kansas which counsel for the Chicago bank contend authorizes the filing of an assignment of a chattel mortgage is the one above quoted relating to this release, and all they contend for it is that "its provisions clearly contemplate the making and recording of an assignment." The statute is penal in its nature (Parkhurst v. First National Bank of Clyde, supra,) and penal statutes are always strictly construed, no matter whether they relate to public crimes or forfeitures to individuals in the way of fixed damages, or damages to be assessed by a jury.
It has been said that "the rule requiring penal statutes to be construed strictly, means only that they are not to be so extended, by implication, beyond the legitimate import of the words used in them, as to embrace cases or acts not clearly described by such words, and so as to bring them within the prohibition or penalty of such statutes." We know of no authority to the contrary. No act not included within the wording of the statutes can be inferred. The application to the statute in question is clear. It relates to the release of the chattel mortgage, and not to the filing of the assignment of it. No words used therein expressly authorize an assignment to be filed, nor can it be said to do so by *Page 728 
implication. And even if it be said that the statute recognizes the right or duty to have an assignment placed of record, we insist that such an assumption in a penal statute does not impose the duty or create the right. Duties imposed by implication are those which the necessarily connected with the subject to which the statute relates, and it is certainly clear that a general statute which makes it the duty of an assignee of a mortgage to release it, does not, by reason of the imposition of that duty alone, authorize him to record it.
The appellee has cited many cases, but our attention has not been directed to a single one bearing on this question, where the assignment of a chattel mortgage was involved, notwithstanding it is one of the controlling points in the case, and has been so treated and admitted by both parties from the beginning of the trial below. It is safe to assume that none exist.
The statutes of Oregon (Hill's Code, sec. 3031) provide that a mortgage may be discharged upon the record thereof by the mortgagee or his personal representative or assignee acknowledging satisfaction of the mortgage before the clerk, or executing a certificate to that effect with the formalities of a deed, and presenting the same to the clerk. Then, sec. 3030 of the same statute provides that the recording of the assignment of a mortgage shall not, in itself, be notice to the mortgagor so as to invalidate a payment made by him to the mortgagee.
The supreme court of Oregon, in the case of Bomberger v.Geiser, 33 P. 609, in passing upon the question as to whether the statutes authorized the recording of an assignment, *Page 729 
following a former decision of that court, said, that a thorough consideration of the subject, rendered necessary by the facts in that case, had satisfied it that the recording acts of that state do not extend to the assignment of mortgages, and then declared that:
"The question is not what the plaintiffs might have done to apprise the defendant grantees that they were incumbrancers, but what they were legally bound to do in order to preserve the priority of their lien against the subsequently acquired rights of the defendants in the property. As the plaintiffs were not bound, under the recording acts, to register their assignment, they were under no legal obligations to take the assignment of the mortgage in the form of a conveyance, and record it, in order to prevent a fraudulent discharge on the record, or to protect subsequent grantees or mortgagees."
The case above referred to is squarely in point, although it relates to a real estate mortgage; but that is immaterial, as the section there construed contained the same provisions as the one we are called upon to interpret, except that it was stronger by reason of the other statute relating to the filing of an assignment of mortgages.
The supreme court of Indiana, in the case of Reeves,guardian, v. Hayes et al., 95 Ind. 521, considered the question in relation to the assignment of a real estate mortgage. The statutes of that state of 1876 contained the following provision:
"Every conveyance or mortgage of land, or of any interest therein * * * * * shall be recorded," etc.
"To entitle any conveyance, mortgage or instrument of writing to be recorded, it shall be acknowledged by the grantor." *Page 730 
"When any conveyance, mortgage or other instrument required to be recorded, is acknowledged," etc.
"The term 'grantor' as used in this act shall be construed to embrace every person by whom any estate or interest in lands is created, granted, bargained, sold, conveyed, transferred or assigned."
"All instruments of writing of and concerning lands or concerning any interest therein * * * * shall be deemed a conveyance within the provisions of this act."
"The recording of the assignment of a mortgage shall not be deemed, of itself, notice to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them to the mortgagee or any assignee before actual notice of such assignment."
But in the face of all of these statutory provisions, one of which relates to the recording of the assignment of a mortgage, the court said that there was no law authorizing the record of the assignment of a mortgage, and that, by reason thereof, such record, if made, would not import notice to subsequent purchasers or mortgagees in good faith.
As to the correctness of this decision we express no opinion, but it shows how reluctant the courts are to invade the domain of negotiable paper and impair its usefulness in commerce and banking transactions, by holding that assignments of mortgages given to secure it must be recorded when there is no positive statute requiring such record. Dealing in commercial paper is the purpose of our banking system, and there is no rule of law more thoroughly settled than that which protects a purchaser of such paper in good faith, before maturity, against equities not known to him; this is necessary to inspire faith in it as security; and we are unwilling unless required by positive statute, to adopt a rule *Page 731 
which will place upon that class of negotiable instruments, secured by chattel mortgage, a restriction which will compel its retirement, except in the county where the mortgage is filed, from the channels of trade; and such would be the effect; for no person would invest his money under such circumstances, without either examining the records himself or having them examined by some responsible party. This would entail delay and expense. The courts should not, by reason of uncertain implications of statutes, destroy the market for negotiable paper, or a considerable part of it, any more quickly than they would destroy a market for the great commerce of the country. The protection of the one is as essential as the other, and this was recognized by the supreme court of Kansas in the case of Burhans v. Hutcheson, 25 Kans. 625; and it will not do to say that the note still remains negotiable, for while that is true in theory it is not true in fact. That alone which guaranteed its payment has virtually been withdrawn, leaving the note with no power in trade. The legislature have the right to require that an assignment of a chattel mortgage be filed, but it has not done so; neither do we.
But even if the statutes authorize such a course, the Chicago bank is in no condition to complain, because the release filed did not meet the requirements of the law. Section 9, of chapter 120, of vol. 2, of Webb's Annotated Statutes, provides how a chattel mortgage must be released. It is as follows:
"When any mortgage of personal property shall have been fully paid or satisfied, it shall be the duty of the mortgagee, his assignee or personal representative, to enter satisfaction or cause satisfaction thereof to be entered of record *Page 732 
in the same manner, as near as may be, and under the same penalty for a neglect or refusal, as provided in the case of the satisfaction of mortgages of real estate."
Sections 6 and 7 of chapter 119 of the same statute, states how a real estate mortgage may be discharged. Section 6 reads:
"Any mortgage of real property that has been or may hereafter be recorded may be discharged by an entry on the margin of the record thereof, signed by the mortgagee or his attorney, assignee or personal representative, acknowledging the satisfaction of the mortgage in the presence of the register of deeds or his deputy, who shall subscribe the same as a witness. A mortgage may be released by a receipt indorsed thereon, signed by the mortgagee, his agent or attorney, which receipt may be entered on the margin of the record, and shall have the same force and effect as the entry on the margin of the record as provided in this section." And section 7 reads: "Any mortgage shall also be discharged upon the record thereof by the register of deeds whenever there shall be presented to him an instrument acknowledging the satisfaction of such mortgage, executed by the mortgagee, his duly authorized attorney-in-fact, assignee, or personal representative, and duly acknowledged and certified as other instruments affecting real estate."
It will be seen that the Siegel-Sanders Company attempted to release the Geneseo bank's mortgage in the manner pointed out by section 7, which provides that a release shall be duly "acknowledged and certified as other instruments affecting real estate;" and sections 9, 10 and 12, of chapter 117, of the same statutes, inform us as to how that acknowledgment shall be made. They are as follows:
"Sec. 9. All deeds and other conveyances of land, or of any estate or interest therein, shall be subscribed by the party *Page 733 
granting the same, or by his lawful agent or attorney, and may be acknowledged or proved and certified in the manner herein prescribed."
"Sec. 10. All conveyances and other instruments affecting real estate, acknowledged within this state, must be acknowledged before some court having a seal, or some judge, justice or clerk thereof, or some justice of the peace, notary public, county clerk, or register of deeds, or mayor or clerk of an incorporated city."
"Sec. 12. The court or officer taking the acknowledgment must endorse upon the deed a certificate showing in substance the title of the court or officer before whom the acknowledgment is taken; that the person making the acknowledgment was personally known to the court, or to the officer taking the acknowledgment, to be the same person who executed the instrument, and that such person duly acknowledged the execution of the same."
The release filed was in the following form:
"In consideration of the payment of the debt secured thereby, we, the Siegel-Sanders Live Stock Commission Company, of Kansas City, Missouri, do hereby release, cancel and finally discharge the deed of trust or mortgage No. 604, covering 526 head of cattle branded, bar on left thigh; given by W. B. Grimes, Jr., to secure the payment of eleven thousand, one hundred, eleven 23-100 dollars, which said deed of trust of mortgage was dated 6-27-1900, and recorded in the office of the recorder of deeds of Clark county, state of Kansas, in book __________, at page _____ Witness the signature of this company this 24th day of November, A.D. 1900.
 "SIEGEL-SANDERS LIVE STOCK COMMISSION CO., (Seal of Company) "FRANK SIEGEL, Pt. [SEAL]"
It will be seen that the release was not acknowledged. There was no attempt to comply with the statute. Without *Page 734 
the certificate of a duly authorized officer attached thereto showing that the maker thereof had acknowledged its execution, it was not entitled to record, and not being entitled to record, it was not constructive notice to any one. And even if the Chicago bank had examined this release, it was bound to know that it was not in form and would not be binding, except as between Grimes and the Siegel-Sanders Company. As between them it was simply an acknowledgment of the payment of the debt.
The statutes of Oklahoma require that a chattel mortgage must be signed by the mortgagor in the presence of two witnesses, who must sign the same; and the court held in the case ofGreenville National Bank v. Evans-Synder-Buel Co., 9 Okla. 359, that a chattel mortgage not signed by two witnesses was not entitled to be filed, and that the fact that the register of deeds filed it gave it no force or effect which it would not have had without such filing. Requirements imposed by statute as to the execution of an instrument are necessarily to be complied with, or it will not give constructive notice even if placed of record. This view is sustained by the Kansas courts. In the case of Fisher et al. v. Cowles, 21 P. 228, it was held that an assignment of a real estate mortgage not duly acknowledged, even when made on the back of the original mortgage, was an instrument not authorized to be recorded; and then the court said: "It (the assignment) being placed there (on the back of the mortgage) gave it no greater validity for record than if placed upon another paper. The law does not intend that such a paper shall be recorded, and therefore the spreading it upon the public records would not give constructive notice *Page 735 
of its contents. As the assignment was not acknowledged as provided by section 11, it should not have been recorded and, being spread upon the public records without authority of law, it imparted no notice whatever." And this is the general rule. (Jones on Chattel Mortgages [3rd ed.], sec. 248.) This point is well settled by many adjudicated cases.
It is true that the appellee on the trial of the case proved by an attorney from Kansas that under the laws of that state a release of a chattel mortgage, when made on a separate instrument, did not have to be acknowledged; but this testimony was a mere conclusion, and is not controlling as to that question. It was agreed between the parties that, in order to avoid the "expense of taking evidence to prove the laws of Kansas" relative to this case, each party might use the statutes and decisions of that state. This agreement authorized the court to consider the statutes and decisions of Kansas, and both parties have so treated it in their briefs, and, recognizing the agreement, we have interpreted these statutes and defined the rights of the parties thereunder.
One other reason urged for the necessity of filing an assignment as a chattel mortgage is, that under the mortgage laws of Kansas, the mortgagee is the owner of the legal title and entitled to the possession of the property; and that the purpose of the registration laws is to notify the world that while the property is in the possession of the mortgagor, the legal title is in some one else. This contention is only partially true. In the absence of a stipulation to the contrary a mortgagee has the legal title, and the right to possession. Sec. 8, of chap. 120, of Webb's Annotated Statutes, provides. *Page 736 
"In the absence of a stipulation to the contrary, the mortgagee of personal property shall have the legal title thereto and the right of possession."
From this statute it will be seen that it is only in the absence of express contracts that the mortgagee is the owner of the legal title or, as a matter of right, may claim possession before the conditions are broken. In the mortgage under consideration, by agreement therein, the mortgagee at least waived the right of possession. But we submit that, under the laws of Kansas, a chattel mortgage is merely a security, and the only way the rights of the mortgagor can be cut off is by foreclosure. The equities of the mortgagor are not cut off by a default. Conceding, however, that the mortgagee had the legal title, the statute as to recording had been fully complied with, and nothing further was required.
The books are full of cases holding that the assignment of a deed of trust or a real estate mortgage must be recorded or the assignee will not be protected against subsequent purchasers and incumbrancers in good faith, but in every one of these cases, so far as we have been able to investigate, the courts held that the statutes on the subject of recording were sufficiently comprehensive to include such instruments.
The Geneseo bank did all that the law required it to do and acted in good faith; while the Chicago bank accepted a second mortgage on the cattle at a time when the Geneseo bank's mortgage, in law, was unreleased, and it was chargeable with the condition of the record at the time it bought its notes.
For the reasons herein stated, we think that, not only the equities (the Geneseo bank being first in time, conceding *Page 737 
that both acted in good faith), but the law is with the appellant, and that the judgment should be reversed and remanded at the cost of the appellee. It is so ordered.
Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.