P. E. REA v. WALTER B. KELLEY.[1]

April 10, 1931.

No. 27,747.

*David R. Thomas* and *Walter A. Ferrell,* for appellant.
*Strong, Myers & Covell,* for respondent.

DIBELL, J.

Action to cancel a mortgage upon real property. The property was owned by the plaintiff and was registered in his name under the Torrens statute. The mortgage was made by the plaintiff to the Staring Company, a corporation of Minneapolis, and by the company assigned to the defendant. The claim of the plaintiff is that payment was made to the mortgagee. The payment if made was made after the assignment and its entry as a memorial upon the Torrens certificate of title and without actual notice by the mortgagor of the assignment. There were findings for the defendant. ·The plaintiff appeals from the order denying his motion for a new trial.

The facts are simple. On October 21, 1926, the plaintiff was the owner of a lot in Minneapolis registered in his name under the Torrens statute. He executed to the Staring Company, a corporation of Minneapolis, a mortgage upon it for $1,400, due October 1, 1929. Thereafter the mortgage was filed in the office of the registrar of titles and was memorialized on the certificate of title. Thereafter the Staring Company, without the knowledge of the plaintiff, assigned the mortgage to the defendant, and the assignment was filed in the office of the registrar of titles and was memorialized on the certificate of title.

The court finds:

"That thereafter and without the knowledge of the plaintiff herein of said assignment, and in the belief that said The Staring Company was still the owner of said mortgage, plaintiff paid the interest on the same and paid the principal by the execution of a new mortgage in the sum of eighteen hundred fifty (1,850) dollars, and on the agreement with said The Staring Company that said mortgage heretofore mentioned, in the sum of fourteen hundred

(1,400) dollars would be canceled and satisfied out of the proceeds of said eighteen' hundred fifty (1,850) dollar mortgage.

"That said mortgage to secure payment of said eighteen hundred fifty (1,850) dollars was made, executed and delivered, on the 28th day of May, 1928, and on said date was filed in the office of said registrar of titles as document No. 78003 and memorialized on said certificate of title.

"That thereafter said The Staring Company assigned said last named mortgage to others, not involved in this action, which assignment was filed in the office of the registrar of titles and without satisfying and discharging said previous mortgage.

"That plaintiff herein had no actual notice of the assignment of said first mentioned mortgage and no constructive notice of the same, except such constructive notice as was given by the filing and memorializing of said assignment of mortgage in the office of the registrar of titles."

It is claimed by the plaintiff that these facts constitute payment. That a payment effective to discharge a mortgage may be made by a subsequent mortgage is assumed from Robbins v. Larson, 69 Minn. 436, 72 N. W. 456, 65 A. S. R. 572. No claim to the contrary is made. The finding of fact is in favor of the appellant, and no attack can be made upon it by either party to this appeal.

Our law is that a mortgage, whether it secures a negotiable or non-negotiable note, is a chose in action; and a purchaser of it is not protected in his security under the recording act. He may enforce the personal liability of the maker of the note under the law merchant or the negotiable instruments act. This general question was considered lately in First Nat. Bank v. Marshall State Bank, 172 Minn. 571, 216 N. W. 231, and Johnson v. Howe, 176 Minn. 287, 223 N. W. 148, where the intervening cases are gathered back to the early case of Johnson v. Carpenter, 7 Minn. 120 (176) which first announced the rule. See 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6284. In short, the purchaser of a mortgage and note, though the note is negotiable, is not protected in his security under the recording act, G. S. 1923 (2 Mason, 1927) § 8226, though directly

within its terms, but is protected on the note as an innocent holder of commercial paper. This is not the prevailing rule, but it is our rule. The statute cited is not applicable to the facts before us. The assignee is not claimed to be other than a good faith purchaser. The mortgagor claims that he has paid and upon that ground asks relief. The statute is noted only because it gives the background of our law and to avoid confusion with an applicable statute soon to be mentioned. The plaintiff and the defendant are innocent, and one or the other must suffer from the wrongdoing of the Staring Company.

Before the recording acts equity fixed priorities. Definite rules were established. In Dixon v. Winch [1900] 1 Ch. 736, 742, the court, referring to the good faith payment by the mortgagor to the mortgagee after the assignment of the mortgage, said:

"It is well settled that where a mortgage is transferred without the privity of the mortgagor the transferee takes subject to the state of account between the mortgagor and mortgagee at the date of the transfer. And it is also well settled that payments of interest or payments on account of principal made by the mortgagor to the mortgagee after, but without notice of, a transfer must, in the absence of collusion, be allowed to the mortgagor as against the transferee. This doctrine has been extended to the case where the whole mortgage debt is, under similar circumstances, paid off."

This is the general rule and often statutes declare it. By G. S. 1923 (2 Mason, 1927) § 8225, having its origin in territorial times, it is provided:

"The record as herein provided of any instrument properly recorded shall be taken and deemed notice to parties: Provided, that the record of an assignment of a mortgage shall not in itself be notice of such assignment to the mortgagor, his heirs or personal representatives, so as to invalidate any payment made by either of them to the mortgagee."

This is a part of R. L. 1905, c. 63, relating to conveyances of real estate. The next section, § 8226, gives a deed later in date but

first of record priority over a deed first in date but later recorded and in a like way gives priority to judgments and attachments over other instruments. This is the section which protects the good faith purchaser. When the legislature by § 8225 made recorded instruments constructive notice, with the limitation as to payment by mortgagors, it continued the equity rule protecting the good faith mortgagor who paid to his mortgagee; or, if we assume that the rule would have continued without the statute, it protected the mortgagor against the need of litigating the question. It may be argued with much reason that the limitation in the statute was inserted through caution to avoid a construction of the recording act at variance with the equity rule; and that without the statute the law would be as it is with it. The cases under the statute are cited in 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6287.

Section 8225 was construed in Olson v. N. W. Guaranty Loan Co. 65 Minn. 475, 68 N. W. 100, 101. The mortgagor in that case paid the amount due on the mortgage after it had been assigned but without notice of the assignment though it was recorded. Referring to the statute the court said [65 Minn. 477]:

"This leaves the law unchanged as to the effect of payment. The loan company was the original mortgagee, and the only party with whom the plaintiff ever dealt as having an interest or right in the note and mortgage. It was from the defendant company that the plaintiff obtained the money, to whom the mortgage was given. In the absence of any notice, she would have a right to presume that the defendant still had the mortgage in its possession. As she had no notice, either actual or constructive, of the assignment, she had a right to pay the mortgage to the defendant itself, or its legally authorized agents, which she did."

In Blumenthal v. Jassoy, 29 Minn. 177, 12 N. W. 517, 518, there was involved the payment of the amount of the note by the maker to the payee before maturity. Referring to the statute quoted the court said [29 Minn. 179]:

"Independent of this statute, a debtor paying his debt (not evidenced by an immature negotiable instrument) to his creditor,

at any time before knowledge or notice of an assignment by the latter, in effect discharges the debt, and a prior assignment gives no right of further recovery; but such payment after notice of assignment is no defence to an action by the assignee. Other parts of the recording law give to the record of certain instruments the effect of constructive notice of their execution. The effect of the statute quoted is simply to provide that the record of the assignment of a mortgage shall not have that effect. It leaves unchanged the law as to the effect of payments. In case the debt is evidenced by a negotiable instrument, not yet mature, a payment to the payee will not prejudice the right of recovery by a *bona fide* holder at maturity. Such has always been the law, and the statute does not affect it."

The holding of this case as to the payment of a negotiable note to the payee without its presentation was reaffirmed recently in Gordon v. Oberle, 183 Minn. 188, 235 N. W. 875.

In Robbins v. Larson, 69 Minn. 436, 72 N. W. 456, 457, 65 A. S. R. 572, it was held that the record of an assignment of a mortgage is constructive notice to all persons of the rights of the assignee save only as excepted by the statute in favor of the mortgagor. The latter part of the statute is a limitation. The court said [69 Minn. 438]:

"The object of the statute is manifest. It was intended to relieve the mortgagor, his heirs and personal representatives, from the inconvenience and expense of having to examine the records to see if any transfers of the mortgage have been made, every time they wish to make a payment of interest or principal on the mortgage. * * * It has no application to a subsequent mortgagee or his assignee. The record of an assignment of a mortgagee is constructive notice to all persons of the rights of the assignee, as against any subsequent acts of the mortgagee affecting the mortgage, save only as excepted by the statute."

The statute goes back to Comp. St. 1849-1858, 405, § (63) in territorial days, and in referring to it in Johnson v. Carpenter, 7 Minn. 120, 125 (176) the court said:

"It seems, therefore, that a mortgagor may always pay his mortgage debt to the mortgagee, whether the mortgage has been assigned or not, if he pays in good faith and without knowledge of the assignment; and also that an assignee, to be fully protected against such payments, must do more than simply place his assignments on record; he must bring home to the mortgagor actual notice that the assignment has been. It will be observed that this provision of statute is general in its application to mortgages, making no exception in regard to such as are collateral to negotiable paper."

The rule stated is the general one. 41 C. J. p. 699, § 720; 1 Jones, Mortgages (8 ed.) p. 819, § 595. Unless it is inapplicable to registered titles or unless the Torrens statute prescribes a different one, the rule now established under § 8225 or in equity independently of it continues.

The Torrens statute was enacted in 1905 as c. 305. It is R. L. 1905, c. 65, §§ 3370-3451. It is the same chapter in subsequent compilations where it appears as §§ 8247-8329. The general body of statutory law relative to conveyances in R. L. 1905 is c. 63, §§ 3334-3364, and in subsequent compilations is c. 63, §§ 8195-8235. The Torrens statute provides for the registration of titles by a judicial proceeding terminating in a decree adjudicating the title. A consideration of the nature of the Torrens title is found in 3 Tiffany, Real Prop. (2 ed.) §§ 580-585; 23 R. C. L. 273, §§ 145-157; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 8354-8364a; 8 Minn. L. Rev. 200. A certificate of title is filed with the registrar of titles, and a duplicate is given the owner. Upon the certificate of title are indorsed memorials if there be any.

Section 8282 provides that the original certificate and the owner's duplicate shall be "conclusive evidence of all matters and things contained therein," and the "notations, indorsements or memorials upon the same made by the registrar of titles, as required by law, heretofore or hereafter filed with the registrar, shall be received in evidence in all the courts of this state, without further or other proof, and shall be prima facie evidence of the contents thereof."

Section 8271 provides:

"Every person receiving a certificate of title pursuant to a decree of registration, and every subsequent purchaser of registered land who receives a certificate of title in good faith and for a valuable consideration, shall hold the same free from all incumbrances, and adverse claims, excepting only such estates, mortgages, liens, charges and interests as may be noted in the last certificate of title in the office of the registrar, * * *."

Section 8294 provides:

"Every conveyance, lien, attachment, order, decree, or judgment, or other instrument or proceeding, which would affect the title to unregistered land under existing laws, if recorded, or filed with the register of deeds, shall, in like manner, affect the title to registered land if filed and registered with the registrar in the county where the real estate is situated, and shall be notice to all persons from the time of such registering or filing."

By § 8248 the registered title is made subject to the same incidents and burdens as unregistered property. The title and not the evidence of it is registered. "The act of registration shall be the operative act to convey or affect the land." § 8293. A title is created by the decree and certificate of registration. State ex rel. Douglas v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 A. S. R. 571; Baart v. Martin, 99 Minn. 197, 108 N. W. 945, 116 A. S. R. 394; Riley v. Pearson, 120 Minn. 210, 139 N. W. 361, L. R. A. 1916D, 7; Henry v. White, 123 Minn. 182, 143 N. W. 324, L. R. A. 1916D, 4; Abrahamson v. Sundman, 174 Minn. 22, 218 N. W. 246. In In re Application of Juran, 178 Minn. 55, 226 N. W. 201, the court referred to the provision of § 8294 to the effect that every instrument which affects the title to unregistered land under existing laws, if recorded, shall in like manner affect the title to registered land if filed and registered with the registrar; and, having in view § 8226, held that possession was not constructive notice of the rights of the person in possession. This is of importance only as it considers the protecting provisions of § 8226, a part of the recording act, as

adopted by the Torrens statute; but we are concerned with § 8225, which has to do with the rights of the mortgagor who pays to his mortgagee after the latter has transferred, which is not carried into the Torrens statute.

A mortgage and assignment and its discharge may be filed and registered and an appropriate memorial entered on the certificate of title. § 8302.

There is nothing in §§ 8297, 8300-8303, which charges the mortgagor with notice of the assignment which is memorialized on the original certificate; and there is nothing requiring the owner's duplicate to be produced when the assignment is memorialized, which manifestly would be imparticable and often impossible. By § 8271 every person receiving a certificate pursuant to the decree of registration holds the same free from all encumbrances except those noted on the certificate. Section 8294 of the Torrens statute is much the same as § 8225 of the statute relative to conveyances, which creates or declares the limitation in favor of a mortgagor paying his mortgagee; but it contains no provision in favor of mortgagors who pay. This section was referred to in a different connection in Horgan v. Sargent, 182 Minn. 100, 233 N. W. 866. It was there said that it was intended to give protection similar to that given by § 8226 to purchasers or mortgagees who had registered the instruments evidencing their rights; in short, while it protects purchasers, it does nothing for mortgagors who pay after assignment.

In Nioa v. Bell, 27 Vict. L. R. 82, 85, where there had been a payment of a mortgage upon registered land after the assignment and the mortgagor was without notice, the court said:

"The old doctrine of equity that payments made by a mortgagor, who has had no notice of the transfer of the mortgage, to the original mortgagee subsequently -to the transfer are to be deemed as payments made to the transferee, still prevails. I think there is nothing in the *Transfer of Land Act* which destroys that old equitable doctrine. To have destroyed it, the language should have been extremely clear and explicit, because it is a doctrine founded on the plainest principles of justice, as it seems to me."

So in Grace v. Kuebler, 39 D. L. R. 39, at p. 40, 56 Can. S. C. R. 1, it was said:

"There cannot be any doubt apart from the provisions of the Land Titles Act in Alberta which may affect the matter in controversy in that province that where a mortgagee assigns his mortgage, and the mortgagor has not received notice of the assignment, he discharges his liability under the mortgage by payment to the mortgagee."

And so further on, at p. 42, the court said:

"I conclude, therefore, * * * that the filing of the caveat in this case did not displace the equitable doctrine of the right of a mortgagor or purchaser * * * to pay the purchase money he had covenanted to pay to the person he had covenanted to pay to, unless and until he had received notice of the assignment of such moneys to a third person, and that the mere filing of a caveat in the Registry Office was not such notice."

The following under a registration system may be noted. Peck v. Sun Life Assur. Co. 11 B. C. R. 215; Thom, Canadian Torrens System, 192; Kerr, Australian Lands Titles, 394; Hogg, Australian Torrens System, 919. We find no direct authority in this country. We are of the opinion however that it should not be held that the mortgagor may not pay his mortgagee and be protected. If the legislature had intended so radical a departure its purpose somewhere would be shown. It did not adopt § 8225 into the Torrens statute; neither did it abolish the equity rule.

Whether the equity rule which obtains, and that is the rule under our statute, is better than one which charges the mortgagor with the duty of inspecting the certificate of title before paying is a mere matter of debate. Discussion leads nowhere. The mortgagor and the purchaser of the mortgage are innocent parties. Usually the loss is occasioned by the broker or agency negotiating the loan or the mortgagee who takes the mortgage intending to sell. Usually the mortgagor and the mortgagee do not personally meet, nor does the purchaser or assignee see the mortgagor. The loan business

is done through some intermediate agency; and the mortgagor knows nothing more than that he is giving a mortgage, the mortgagee nothing more than that he is getting a secured loan, and the assignee only that he is purchasing a security. There is no way of preventing loss to one or the other when the intermediary or the mortgagee engages in a fraudulent manipulation of the mortgage and assignment, unless the interested parties are alert, and usually they are not. A statute can put the loss upon either innocent party. It is a question of policy. It cannot reach the fraudulent intermediary or mortgagee and stop the wrong.

We hold that the law as to payment by the mortgagor is the same when the title is registered as it is when it is not. We appreciate that if registered the mortgagor has a certain, though perhaps inconvenient, way of finding whether there has been an assignment. The rule which we adopt avoids the anomaly of putting the mortgagor who pays without actual notice in one position if his title is registered and in a different one if it is not registered. We appreciate that there are left questions which may be for litigation whether payment has in fact been made; and the effect upon the personal liability of the maker of a secured negotiable note who pays before maturity or without the production of the note may arise in particular cases.

■ There is no settled case. The pleadings, findings, motion for amended findings or new trial, and order denying it are certified and returned and designated a settled case. Without certification they are a part of the record. Fidelity-Philadelphia Tr. Co. v. Brown, 181 Minn. 392, 232 N. W. 740. They are not a part of the settled case, and they are here just as they would be without the certification.

The finding on the question of payment is in favor of the appellant, and its correctness is not for review. Whether the evidence shows payment within Robbins v. Larson, 69 Minn. 436, 72 N. W. 456, 65 A. S. R. 572, is for consideration upon the evidence when a new trial is had. All that this appeal determines is that if the

facts are as found the plaintiff is entitled to relief. Whether there was payment is not determined.

Order reversed.

LORING, J. took no part.

