(Opinion published 57 N. W. Rep. 223.)

---

## Joan T. Smith et al. vs. James S. Parsons et al.

Argued Nov. 13, 1893.    Affirmed Dec. 18, 1893.

No. 8419.

**The test of usury.**

The test of whether a contract is usurious is, will it, if performed, result in securing to the lender a greater rate of interest than is permitted by law?

**Interest at ten per cent. a year on the money actually loaned is all the law allows.**

When a "bonus" is exacted by the lender as a consideration for making a loan, it is, in computing, for the purpose of determining whether the loan is usurious, to be deducted as of the date when it is payable. If payable at the time of the loan, it is to be deducted from the principal as of the date of the loan, and the remainder, or what the borrower receives and retains, is to be taken as the basis for computation.

**Mortgage, securing excepted paper, is not excepted.**

A certain loan contract *held* usurious. The exception of bona fide purchasers of negotiable paper in Laws 1879, ch. 66, § 3, from the operation of the usury law does not extend to a mortgage to secure such paper.

**Parties may stipulate that their contract shall be construed by the law of the residence of borrower.**

The borrower lived in this state. The real estate was situated here. The notes and mortgage were made here, and sent to Connecticut, where

the lender lived, for him to examine, and determine if he would accept them as security for the loan, and he there accepted them. The notes were payable in Connecticut. *Held,* the parties might stipulate that the notes should be construed by the laws of this state.

Appeal by defendants, James S. Parsons and others, from an order of the District Court of Cottonwood County, *P. E. Brown,* J., made August 14, 1893, denying their motion for a new trial.

The plaintiffs, John T. Smith and Jennie Smith his wife, made their promissory notes, ten for $1,000 each, and twenty for $500 each, all dated October 1, 1883, due five years thereafter, and bearing interest at the rate of seven per cent. a year payable semi-annually. They also made a mortgage on lands in Cottonwood, Jackson and Murray Counties, securing payment of the notes. They sent these notes and the mortgage with abstracts of title to defendant, James S. Parsons of Hartford, Conn., for approval. He accepted the securities and agreed on February 21, 1884, to make the loan. He advanced portions of the money from time to time and it was used to pay off prior incumbrances on the mortgaged property. Parsons sold a part at least of the notes, but never assigned the mortgage or any interest in it. On December 13, 1883, James S. Morgan purchased from Smith four of the notes of $1,000 each, and paid in good faith $4,000 for them. Smith paid interest on all the notes to October 1, 1890. In August, 1891, Parsons commenced foreclosure by advertizement, under a power of sale in the mortgage. Smith and wife then brought this action to restrain the sale, claiming the mortgage to be usurious. The trial Court found upon the evidence adduced at the trial:

"That it was agreed between Parsons and Smith on February 21, 1884, that Parsons would then accept said mortgage and notes and make to the said plaintiff, John T. Smith, thereon, as of that date, a loan of twenty thousand dollars; that the payment of said sum should be deferred, and that the same should be paid over to said Smith in installments convenient to the defendant Parsons at times to be thereafter fixed by him, and as a consideration for said loan, in addition to the interest on said notes according to their terms, said Smith agreed to pay to said Parsons a commission of $1,000 and perform services of the value of $500 in soliciting life insurance, and that said Smith should pay interest on said notes from their

date at the rate of seven per cent. per annum according to their
terms. That thereafter on November 4, 1884, Smith paid to Par-
sons the commission of $1,000, and that between April, 1883, and
the fall of the same year Smith performed services concerning the
obtaining of insurance risks of the value of $500. That the agree-
ment to defer the payment on the loan, to pay the bonus of $1,000,.
to perform services in obtaining life insurance risks, to pay in-
terest on money before received, and not received, were devices en-
tered into to evade the usury laws of this State, and were mere
covers for usury. That the mortgage described in the complaint
and herein described is usurious, and void."

The defendants made a case containing all the evidence and
it was settled, signed and filed. On it and the pleadings, findings
and files, the defendants moved for a new trial on the ground that
the findings were not supported by the evidence and that the con-
clusions of law were not supported by the facts found. This motion
was denied and defendants appealed. The discussion here was
mainly upon the evidence, whether or not it supported the facts
found in the Court below.

*J. G. Redding* and *Charles C. Willson*, for appellants.

By the sale of four of the notes to Morgan December 13, 1883,
Smith accepted the securities and agreed to make the loan. This
was before there was any negotiation for a bonus. Immediately
after Morgan bought his notes, that mortgage had existance as a
contract, and Morgan had a right to look to it for his security. The
contract to pay $1,000 commission was made February 21, 1884.
This was at least two months after the mortgage had become a
valid security. And if the agreement made February 21, 1884,
was void for usury, it did not invalidate the previous contract made
by Parsons' acceptance and sale of the notes to Morgan and others.
A contract not usurious at its inception cannot be rendered invalid
by any subsequent usurious negotiation. *Avery* v. *Creigh*, 35 Minn.
456; *Stein* v. *Swenson*, 44 Minn. 218; *Drury* v. *Morse*, 3 Allen, 445;
*Nichols* v. *Fearson*, 7 Pet. 103; *New York Fire Ins. Co.* v. *Ely*, 2
Cow. 678.

Usury, being a defense highly penal in character, must be set
forth in the answer and strictly proved at the trial. No infer-

ences will be indulged to sustain the defense. It will not avail
the party if the usury proved is not that set up in the answer; nor·
will it avail him to make out a case which leaves the question in·
conjecture, and does not certainly show that usury was contracted
for at the time the loan was made. *Manning* v. *Tyler*, 21 N. Y. 567;·
*Vroom* v. *Ditmas*, 4 Paige, 525; *Frank* v. *Morris*, 57 Ill. 138; *Sujette*
v. *Wilson*, 13 Ore. 514; *Ewing* v. *Howard*, 7 Wall. 499; *Chase* v. *New·*
*York M. L. Co.*, 49 Minn. 118; *Thomas* v. *Murry*, 32 N. Y. 605.

If the full amount of interest reserved and commission exacted
at the time the contract for the loan was made, spread over the whole·
term of five years, do not exceed ten per cent. a year, payable yearly,·
and in advance each year, then the contract is not corrupt or·
usurious within our statute. Laws 1879, ch. 66. The bonus will
be spread over the entire five years. *Upton* v. *Donahue*, 32 Neb.·
565; *McGovern* v. *Union M. L. Ins. Co.*, 109 Ill. 151; *Chase* v. *New·*
*York M. L. Co.*, 49 Minn. 111; *Brown* v. *Scottish-American Mortg.·*
*Co.*, 110 Ill. 235.

Parsons is a trustee and holds the title to the mortgage with·
power to foreclose for the benefit of the other defendants who hold·
the notes. Parsons was the proper person to foreclose the mortgage
by advertizement. *Burke* v. *Backus*, 51 Minn. 174; *Brown* v. *Dela-*
*ney*, 22 Minn. 349; *Bottineau* v. *Ætna Life Ins. Co.*, 31 Minn. 125;·
*Solberg* v. *Wright*, 33 Minn. 224.

The notes having been delivered in Connecticut and being pay-·
able in that State are governed as to usury by the laws of that·
State, and as the burden of showing usury was upon the plaintiffs,
they should have shown the statute of that State in evidence.·
There is in fact no usury law in Connecticut. 1 Jones, Mortg. §§ 656,·
657; Story, Conflict Laws, §§ 291, 292, 293, 294; Bishop, Contracts,·
§§ 1374, 1390; *Wane County Sav. Bank* v. *Low*, 81 N. Y. 566. But·
there is a clause in the notes that they are made under, and are·
to be construed by, the laws of Minnesota. Will this clause import
our usury laws into the contract. 1 Jones, Mortg. §§ 658, 660, 661,·
663; *Townsend* v. *Riley*, 46 N. H. 300; *Dugan* v. *Lewis*, 79 Tex. 246;·
*Mott* v. *Rowland*, 85 Mich. 561; *Kilcrease* v. *Johnson*, 85 Ga. 600.·

This bonus of $1,000 was part of the compensation for the loan
and was so applied. It cannot be taken out of the principal; cer-

tainly not before the bonus was paid on November 4, 1884, nor can it be taken out then, without making a new contract between the parties, and making it, too, for the purpose of destroying the contract they did make, and forfeiting the money loaned. *Leonard* v. *Cox,* 10 Neb. 541; *Mathews* v. *Toogood,* 25 Neb. 99; *Tepoel* v. *Saunders Co. Bank,* 24 Neb. 815; *Upton* v. *O'Donahue,* 32 Neb. 565; *Chase* v. *New York M. L. Co.,* 49 Minn. 111.

*Wilson Borst* and *Loren Cray,* for respondents.

In order to determine the character of the transaction between the parties and dispose of the question of usury, two aggregate sums must be arrived at: First, the amount actually received with interest thereon from the time when received, at the highest rate known to law. Second, the amount they contracted to pay of both principal and interest. If the latter sum is greater than the former then there is usury. In view of the fact that it was contracted that Smith should not receive the money at the date of the notes, the most that defendants can claim is that interest should be cast on the amounts received from the time they were received, at ten per cent., until the maturity of the contract, viz: October 1, 1888. If Smith has contracted to pay more than this, it is surely usury. Where a portion of the money loaned is withheld, the borrower paying interest from the time the transaction took place, it is usury, at least if the result was the receipt of unlawful interest. *East River Bank* v. *Hoyt,* 29 How. Pr. 280; s. c. 32 N. Y. 119.

Now what did plaintiffs contract to pay? First, $20,000 of principal, as per his notes; five years' interest at seven per cent., $7,000; bonus, $1,000; services in procuring insurance, $500; total, twenty eight thousand five hundred dollars ($28,500). This exceeds by $1,157,64 the total amount of money received with ten per cent. interest on it from the time received until the expiration of the loan.

Returning to the lender a part of the sum on which interest is reserved, reduces the contract to a loan of the residue, and the money returned is a discount. *Oyster* v. *Longnecker,* 16 Pa. St. 269; *Collamer* v. *Goodrich,* 30 Vt. 628; *Landis* v. *Saxton,* 89 Mo. 375; *Blymyer* v. *Colvin,* 127 Pa. St. 114.

Where the rate of interest in the State in which the contract is

made, and in the State in which it is to be performed, differ, the parties may contract for the rate of interest at either place. Note in 6 Am. Dec. 193; *Martin* v. *Johnson,* 84 Ga. 481; *Mott* v. *Rowland,* 85 Mich. 561.

GILFILLAN, C. J. Action to enjoin the foreclosure under the power of a mortgage upon real estate alleged to have been usurious. Smith executed to Parsons thirty promissory notes, aggregating in amount $20,000, and he and wife executed a mortgage upon real estate situated in this state to secure the same, all dated October 1, 1883, and payable October 1, 1888, with interest, payable semi-annually, at the rate of seven per cent. per annum. The mortgage was duly recorded. The papers were executed, not upon a loan made at the time, but upon an application to Parsons for a loan; and they were forwarded from Minnesota, where Smith resided, to him, at Hartford, Conn., in which state he resided, for his examination and acceptance or rejection; and a considerable time appears to have elapsed between their execution and Parsons' determination to accept them, and make the loan. On the trial the facts were found that at the time of agreeing to the loan, and as part of the transaction, Smith agreed to pay, and he afterwards paid, to Parsons, as a bonus or commission for making the loan, 5 per cent. on the $20,000, and also to render certain services, which he did render, and which were of the value of $500. The loan was not paid to Smith at once, but, according to the testimony of one witness, the agreement was that, if enough of it to satisfy one prior lien on the property (amounting to $3,947.18) were paid at once, the remainder might be paid within a reasonable time; according to another witness, that, on enough to satisfy that lien being paid, the remainder might be paid in installments convenient to Parsons. The jury, to whom certain questions were submitted, found, as they had a right to do, the fact to be as testified by the second witness. The court also made findings of fact, among them that the loan was accepted February 21, 1884; that the agreement was as follows: "That said Parsons would then accept said mortgage and notes, and make to said plaintiff John F. Smith thereon, as of that date, a loan of twenty thousand dollars; that the payment of said sum should be deferred, and that the same should be paid over to said Smith in installments

.convenient to the defendant Parsons;" that the two bonuses we have mentioned should be paid, and "that said Smith should pay interest .on said notes from their date at the rate of seven per cent. per annum, according to their terms;" and also "that said agreement to defer the payments on said loan, to pay the bonus of one thousand dollars .for the services of Smith in obtaining life insurance risks, to pay interest on money before received and not received, were devices .entered into to evade the usury laws of this state, and were mere .covers for usury."

The notes were made payable at Hartford, and in them was this .clause: "It is expressly agreed and declared that these notes are .made and executed under, and are in all respects to be construed .by, the laws of the state of Minnesota."

The findings of fact above quoted, leaving out the last quotation, ·which consists of an inference from the other facts, were fully sustained by the evidence. Parsons may have concluded—probably ;had—to accept Smith's application, and make the loans, prior to February 21st, but he did not communicate his decision to Smith until ;that date.

To be usurious, a contract must be so when it is made. It cannot ;be made so by any default to carry out its provisions; so that the fact that in some way, not explained, there was a failure to advance ;to Smith about $1,000 of the amount agreed, that not being contemplated by the agreement, is not to be taken into account in de-.termining whether it was usurious. The test of that question is, will the contract, if performed, result in producing to the lender a rate of interest greater than is allowed by law, and was that result ·intended?

When the agreement exacts from the borrower a "bonus" to be ·paid to the lender for making the loan, that, on the question of ;usury, must be taken out as of the date when it is to be paid by the ;terms of the agreement. If payable at the time of advancing the 'loan, it is for the purpose of determining what rate of interest the ;agreement reserves to the borrower, to be deducted as of that date ;from the amount·of loan nominally agreed on, and the computation .of interest made on the remainder. The law is not bound by the .names parties apply to their transactions, but it regards the sub-;stance and effect of what they do or agree to do. So if A. and B.

agree that A. shall loan to B. a certain sum, and that B. shall at the same time pay a certain sum to A. as a consideration for making the loan, it is in substance and effect an agreement to loan the difference between the two sums.

And, though the parties call it "interest in advance," if it will result in reserving to the lender a rate greater than the rate permitted by law on the amount to be actually retained by the borrower, it is usury. The only exception to this is that provided for in the clause in Laws 1879, ch. 66, § 3, in force when this loan was made, as follows: "Provided that the payment of interest in advance for one year at a rate not exceeding ten per centum per annum shall not be construed to be usury." This was, doubtless, inserted in reference to the custom among bankers of taking interest in advance, calculated, not on the sum the borrower will receive and retain after taking out the interest, but on the principal sum he agrees to repay at the end of the term. When calculated in that way, the borrower pays more than the agreed rate on what he actually gets. If the agreed rate be 10 per cent., he pays more than 10 per cent. on what he gets, and that would be usury, but for the above clause. The clause sanctions that mode of calculating interest when paid in advance, limiting the time, however, for which interest at the permitted rate may be so calculated and taken in advance to one year. In all other cases the retaining by the lender of interest calculated in that way will be usury if the amount retained be more than the permitted rate on the amount the borrower receives and retains.

The agreement that the money should be advanced to Smith, after the first installment, in installments at the convenience of Parsons, could not be construed to leave to the latter to determine what dates and amounts would be convenient for him, nor to justify him in taking no steps to make it convenient to advance the installments. The construction, if it were necessary to make one, would probably be that the installments were to be advanced at times and in amounts reasonable in view of the purposes for which the money was borrowed, if known to the lender.

The money, after the first installment, was advanced by Parsons to Smith on different dates, and in different amounts; the last— which they seem to have regarded as making up the full advance of $20,000—being November 4, 1884. This may be taken as a practical

construction of the agreement, and as establishing what were the convenient or reasonable times and amounts contemplated by it. We are to assume, therefore, that the agreement contemplated that the last installment should be paid November 4, 1884.

No times were agreed on for the payment of the bonuses, but, as they were to be paid for making the entire loan of $20,000, we must assume the parties, intended they should be paid when that sum was made up by the various installments.

These considerations furnish a basis for making a computation to ascertain if the interest or compensation for the use of the money actually to be received and retained by the borrower was at the rate of more than ten per cent. per annum on that amount or those amounts. The interest on the several amounts, at that rate, from the dates of the advances to the time of paying the last installment, . November 4, 1884, was about $930. By the terms of the notes there was payable on and before October 1, 1884, as interest, $1,400. It is a mode of computation which defendants cannot complain of, to deduct the bonuses from the principal $20,000 as of the date of November 4, 1884, and calculate the interest on the remainder, $18,500, at the rate of ten per cent. from that date to the maturity of the notes; add the $930 to that, and to their sum add the principal retained by the borrower, $18,500, aggregating $26,553, and compare that with what by the terms of the notes and mortgage the borrower was to repay to the lender, $20,000 principal, and $7,000 interest. The usurious character of the transaction is apparent.

The clause in Laws 1879, ch. 66, § 3, above referred to, excepting *bona fide* purchasers of negotiable paper from the operation of the usury law, is confined to the paper itself, and does not extend to a mortgage given to secure such paper. That is in accordance with what this court has always held in regard to securities for commercial paper in the hands of a *bona fide* purchaser. It has always held that the privileges and immunities belonging to that kind of paper do not extend to a mortgage given to secure it, and we must presume the legislature had that rule in view when enacting the usury law. The purpose was evidently to preserve to such paper, where tainted with usury, the same immunities and exemptions as apply to the same kind of paper in respect to other defenses.

It is in accord with the weight of authority and with principle

that where two parties make a contract of loan in one state to be performed in another they may, acting in good faith, and without intent to evade the law, agree that the law of either state shall control as to the rate of interest. 2 Kent, Comm. (12th Ed.) 460; *Robinson* v. *Bland*, 2 Burrows, 1077; *Miller* v. *Tiffany*, 1 Wall. 298.

When parties living in different states execute a contract in one, or partly in one and partly in the other, and it is to be performed in the other, it has often been a matter of great nicety to decide by the law of which state the contract is to be construed, and its validity determined. In the reports are a vast number of cases in which the question has arisen. Parties ought to be permitted, when making their contract, to avoid such question by determining for themselves, especially where, had they taken the trouble, they might have executed the contract in the state in which they have provided it shall be performed, or might have provided for its performance in the state where executed.

In this case the makers of the notes and mortgage lived in this state, the land mortgaged is situated here, the instruments were made here; and, notwithstanding they were to be accepted as security for the loan in Connecticut, and the notes were payable there, we think it was competent for them to agree, when making the contract, that its construction and validity should be determined by the law of this state. This makes it unnecessary to determine by the law of which state it would have to be decided had they not so agreed.

The assignment of error upon rulings of the court admitting or excluding evidence, and on findings of fact other than as to the facts herein recited, need not be considered, for such evidence and findings could have no bearing on the question decisive of the case —that of usury.

Order affirmed.

(Opinion published 57 N. W. Rep. 311.)