ROSPIGLIOSI v. GLENALLEN MINING CO. et al.
(GRACE et al., Interveners).

No. 4464.   Decided December 22, 1926.   (252 P. 276.)

*James D. Pardee*, of Salt Lake City, for appellants.

*Van Cott, Riter & Farnsworth*, of Salt Lake City, for respondent Rospigliosi.

*Samuel A. King*, of Salt Lake City, for defendant Glenallen Mining Co.

*W. H. Bramel*, of Salt Lake City, for defendant Helena L. K. Goddard.

*Evans & Sullivan*, of Salt Lake City, for defendant Western Machinery Co.

*J. Louis Brown*, of Salt Lake City, for defendant Morrison-Merrill & Co.

*Payson W. Spaulding*, of Evanston, Wyo., for defendant Jos. Bird.

*Alfred W. Agee*, of Ogden, amicus curiae.

GIDEON, C. J.

The plaintiff, respondent, seeks by this action to foreclose a mortgage on several mining claims situate in Wasatch county, this state. The Glenallen Mining Company is the mortgagor. There is no question raised respecting the regularity of the execution of the mortgage. Several other parties in addition to the mortgagor are made defendants. Some of the defendants are judgment lienholders; others it is alleged have some interest in or claims on the property, and they are made parties for the purpose of foreclosing whatever interests they may have, if any. Joseph Bird, Sr., and Helena L. K. Goddard were made parties defendant. Their interests are not adverse to that of plaintiff. The relief sought by these defendants is the same as that sought by plaintiff. Further explanation of their interests will appear later in this opinion.

The complaint is in the usual form for the foreclosure of a mortgage. The Glenallen Mining Company, mortgagor, filed an answer in which all of the allegations of the complaint are admitted. Joseph S. Grace and Eva S. Marks, stockholders in the Glenallen Mining Company, were permitted to intervene in the action and filed a complaint in intervention.

The trial court found the issues in favor of plaintiff and entered its decree of foreclosure. From that judgment this appeal is prosecuted.

The defense, and the only one necessary to consider here, presented by the complaint in intervention, is that of.usury. The interveners are the only appellants. The controlling issues here, and the issues determined by the trial court, are thus presented by the complaint in intervention and the reply thereto by the respondent.

On or about September 8, 1920, the Glenallen Mining Company, a local corporation, was in possession of the mining claims and other property described in the mortgage. This company was organized in 1918. The company and its owners had been attempting for a number of years to develop the mining claims in controversy with the hope that valuable ore deposits might be found and the mine become a valuable and paying property. It also appears that considerable devolpment work had been done and an effort had been made, partially successful, to construct a mill on the property. The mining company was indebted and sorely in need of funds at the time of the execution of the mortgage. A Mr. Stallo and Judge Rockwood, of New York, were stockholders in the mining company. Mr. Stallo was related to the respondent Rospigliosi. It appears that these stockholders sought to interest respondent in the company, and, if possible, to induce him to lend to the company sufficient funds to pay its indebtedness and to complete the mill then partly constructed on the property. Pursuant to negotiations, respondent came to Utah accompanied by a Mr. McNeill, an attorney at law of Washington, D. C., and also by

an Italian mining engineer of note. The attorney accompanied respondent, as the testimony shows, to conduct the negotiations and to pass upon any legal questions that might arise in the event that a loan was made, the engineer to examine the mine and give his opinion as to its value. That is to say, it was the duty of the engineer to check up on former reports that had been made respecting the property and give his opinion as to whether a valuable mine might be developed. The mine was examined by the engineer, the attorney determined the legal questions presented, and, as a result a mortgage was executed by the mining company on September 8, 1920, to secure eight promissory notes of $5,000 each, payable 18 months after date. Six of the notes were made payable to respondent for $5,000 each and two to Robert H. McNeill, the attorney accompanying the respondent, for $5,000 each. The mortgage secured the six notes payable to the respondent and also the two given to McNeill. The interest stipulated in the notes is 7 per cent per annum. McNeill failed to pay to the company the $10,000 evidenced by the notes made payable to him, and he thereafter indorsed the notes and returned them to the mining company. These notes were subsequently sold and became the property of the defendants Joseph Bird, Sr., and Helena L. K. Goddard, who were made defendants. The payment of these two notes to the present owners was provided for by the decree of the court.

The court, among others, made the following findings:

"That Glenallen Mining Company neither directly nor indirectly gave, nor directly nor indirectly requested any person to give, nor knew that there was to be given, any bonus stock to said plaintiff or to Robert H. McNeill for the making of said mortgage loan of $40,000, and the Glenallen Mining Company was not a party to the transaction whereby any bonus stock was given to the said plaintiff and Robert H. McNeill; and such company was the real beneficiary of said loan.

"That the bonus stock given to the said plaintiff and Robert H. McNeill was voluntarily offered and given by certain large stockholders of the Glenallen Mining Company, to wit, James B. Allen 100,000 shares, E. K. Stallo 100,000 shares, Samuel A. King 50,000 shares, and Nash Rockwood 50,000 shares, in order to subserve their

own purposes and interest, and was accepted by the said plaintiff and Robert H. McNeill for legal and legitimate purposes, to wit: Such contributing stockholders desired the prestige and the help that would accrue to such company by its being known that the plaintiff was a large stockholder; that the giving of such stock would doubtless result in making their remaining stock more valuable; that plaintiff, in order to decide whether he would make the loan came from New York City, N. Y., to Salt Lake City and Park City, Utah, and brought with him his attorney, R. H. McNeill, from Washington, D. C., and also brought from New York City an eminent mining engineer; plaintiff paid the expenses of himself and such other two persons amounting to about $1,600, and was not reimbursed for any part thereof; plaintiff was paid nothing for his own time; plaintiff for a time acted as treasurer of such company and without compensation; such contributing stockholders expected through plaintiff to find an outlet for the sale of their remaining stock, or a part thereof, as well as expecting through the plaintiff's influence the better to finance such company's mining operations; there was no express agreement that the plaintiff would be reimbursed either for his own time or for such expenses; the plaintiff also paid for the time of such mining engineer and received no reimbursement; that it was an asset to such company to have it known that plaintiff, after personally inspecting such company's mining properties and after the plaintiff's attorney from Washington, D. C., had been over the affairs of the corporation and after an eminent mining engineer from New York City had examined the company's properties, that the plaintiff and his attorney not only had made a mortgage loan on the company's property of $40,000, but had also become large owners in the shares of the company, namely, 300,000 shares; that such contributing stockholders thereby expected to receive substantial and sufficient considerations for the giving of said bonus stock.

"No bonus stock was contributed by either of the said interveners Joseph S. Grace and Eva S. Marks. No bonus stock was exacted either by said plaintiff or Robert H. McNeill, nor was the giving of the bonus stock a condition precedent to the making of said mortgage loan. Said bonus stock was neither given nor accepted with the intention of violating, nor did it violate, the law or statutes of Utah regarding usury. The said contributors of bonus stock, at the time of making said mortgage loan and at all times since, thought and considered and practically construed the giving of such bonus stock as an honest and legitimate transaction and in no way usurious. That, if and when said plaintiff is paid in full, he will receive no more than the said loan of $30,000, said interest at the rate of 7 per cent per annum, and taxed costs of court. That when said bonus stock of

300,000 shares was given and accepted the same did not have a fixed or real market value, and the intrinsic value of the mining property of the Glenallen Mining Company was not proven and depended entirely on future development yielding a sufficient quantity of paying ore and of such company successfully financing itself as well as successfully solving certain metallurgical and mill problems. The said mining property on September 8, 1920, was, and ever since has been, of a purely speculative value. On September 8, 1920, the Glenallen Mining Company had no title of record, either legal or equitable, to any of its mining property, although it had undisturbed possession thereof."

The effort on the part of the interveners was to establish that the value of the stock contributed to the respondent by the stockholders as stated in the court's finding quoted was such that it, together with 7 per cent interest contracted to be paid, was greater than the maximum interest allowed to be collected under our usury law. The sections of our statute (Comp. Laws 1917) involved are:

"3321. The parties to any contract may agree in writing for the payment of interest, for the loan or forbearance of any money, goods, or things in action, not to exceed twelve per cent per annum.  *  *  *

"3322. No person, association, or corporation shall, directly or indirectly, take or receive any money, goods, or things in action, or in any other way, any greater sum or greater value for the loan or forbearance of any money, goods, or things in action than is prescribed in section 3321. Any person, association, or corporation, their or its agents, servants, employes, clerks, or attorneys, violating any of the provisions of this section is guilty of a misdemeanor."

Section 3323 provides in effect that the borrower may recover in an action against the lender for any money or the value of any property so paid under an usurious agreement if action be brought within one year, and, if the action is not brought by the borrower within one year, then the county superintendent of schools may institute an action within three years for the recovery of such amount.

It is provided by section 3329 that, whenever it is satisfactorily made to appear by proof or admissions of a party

that any evidence of debt has been taken or received in violation of the provisions of the sections quoted, the court shall declare the obligation void and enjoin any prosecution thereon and order the evidence of debt to be surrendered and canceled and any real or personal property embraced within the terms of the contract to be relieved from the lien and possession, if possession is in the plaintiff, delivered to the debtor.

As we view the question or questions determinative of this appeal, it is not necessary to consider or determine whether the trial court erred in fixing the value of the mining stock, if it did fix its value, or whether it was prejudicial error to fail to make a direct finding of the value of the stock at that particular time. It is not contended, nor is there any evidence, that the Glenallen Mining Company was a party to or in fact was aware of the giving of this stock by the individual stockholders, unless it could be held that the knowledge of the contributing stockholders is notice to the corporation. It is further definitely shown that the Glenallen Mining Company, mortgagor, contributed no part of the stock nor did it request any of its stockholders to make such contribution. It is likewise clearly shown that neither of the interveners contributed any part of the stock enumerated in the court's findings, nor did they personally or otherwise lose any property or right by the contribution of the stock by other stockholders.

We have here the question or questions whether under the facts proven the intervening stockholders can successfully interpose the defense of usury by reason of being stockholders, or whether under the facts shown they can be heard to interpose the defense of usury on behalf of or for the mortgagor corporation; it appearing that the corporation had declined to make such defense after a request so to do by such intervening stockhlders.

Laws limiting the consideration to be paid for the use of money are enacted primarily for the benefit of the borrower, and to that extent constitute an abridgment of the

right of contract. Such laws are enacted to insure against lenders taking unjust and unconscionable advantage of oppressed debtors by extorting from such oppressed debtors contributions in excess of the maximum fixed by statute. To accomplish that purpose, the Legislatures of different states have provided for the forfeiture of the interest, forfeiture of the principal and interest, and right to have the contract declared void and unenforceable, the right given the debtor to recover interest paid, and also making the taking of usurious interest a misdemeanor. Our statute seems to include all of those penalties. The penalties provided, however, are not primarily for the purpose of punishing the lender but to protect the borrower. That such is the purpose of and justification for laws condemning usurious contracts is universally recognized by courts and text-writers.

The Supreme Court of Wisconsin in *McArthur* v. *Schenck*, 31 Wis. at page 676 (11 Am. Rep. 643), as an introduction to a discussion of a question similar to the one presented on this appeal, says:

"The theory upon which laws against usury have been enacted, and the principle which has governed in their interpretation, have always been, that the borrower was at the mercy of the lender and subject to his utmost exactions and avaricious demands, unless protected by laws. In theory the borrower has been put, by such laws, in the same category with persons under legal disability to contract, such as infants, femes coverts, and persons non compos mentis. He has been declared legally incompetent to make a bargain about money where more than the lawful rate of interest was demanded. The prohibition of all such laws, and of our law, has been and is against the lender's bargaining for, reserving or taking usury from the borrower. We say 'from the borrower,' not because the statute uses these exact words or in terms so enacts the prohibition, but because such is the evident intent and purpose of the statute. Acts of the kind have always been so interpreted and understood."

The nature of usury laws, and the objects sought by their enforcement, logically make the defense of usury personal to the debtor and it is not a right accorded to others not

parties to the contract. In the course of the opinion in *Austin* v. *Chittenden*, 33 Vt. 553, at page 556, it is said:

"It is held generally, and, so far as we know, universally, wherever laws exist against taking usurious interest, whether they declare the contract void in whole or only to the extent of the usury, or whether a penalty is given for the taking, that such laws are for the protection of the borrower only, and he alone can take advantage of the law."

Under the subhead "Who May Take Advantage of Existence of Usury," in 39 Cyc. 999, it is said:

"Usury laws are enacted for the protection of needy borrowers and not to punish extortion in money lenders. Hence the defense of usury is purely personal to the borrower, or those in privity with him. This is true whether the statutes declare the contract void in whole or only to the extent of the usury, or whether a penalty is given for the taking."

The third and fourth headnotes to *Salvin* v. *Myles Realty Co.*, 227 N. Y. 51, 124 N. E. 94, 6 A. L. R. 581, are:

"A finding that a loan was made to one who was the owner of substantially all the stock of a corporation, and not to the corporation, under a usurious agreement by which a bonus of $1,000 was paid to lender, was not supported by evidence that such person paid the $1,000 bonus, but that the loan was made and paid to the corporation, where there was no evidence that the corporation was a party to any agreement by which a bonus was agreed to be paid or that it paid any part of the bonus.

"To show usury, evidence must be produced to show a corrupt intent by both the borrower and the lender."

The first headnote to *Clarke* v. *Sheehan*, 47 N. Y. 188, is as follows:

"To establish usury, some consideration in addition to lawful interest must proceed from the borrower. It is not enough that the lender is moved by considerations of collateral benefits to himself, which may result indirectly from the transaction, provided they are not a burden imposed upon the borrower, and to which he submits as the means of obtaining the loan, and which are intended as a compensation to the lender beyond the legal rate of interest."

In the course of the opinion in *McArthur* v. *Schenck*, supra, it is said:

"A recurrence to these general principles, which are well understood and elementary, seems very clearly to indicate that the payment of usury, if it be properly so called, not by the borrower, but by a stranger to the contract, one not connected with the loan or liable for it, who voluntarily or from any motive advances the sum exacted or sustains the loss where the borrower is unwilling or declines so to do, is not a circumstance of which the borrower can be permitted to take advantage for the purpose of having the contract declared inoperative and void for usury. It seems not to be a case in any manner falling within the true spirit and intent of the law against usury."

The Supreme Court of Florida in *Tucker* v. *Fouts*, 73 Fla. 1215, 76 So. 130, L. R. A. 1917F, 916, says:

"A bonus paid by a third person may or may not cause a transaction to be usurious, according to the circumstances. Thus, if a third person in order to get some benefit for himself, or for any personal reasons, without the knowledge or consent of the borrower pays the lender a bonus as an inducement for a loan, the borrower receiving the full amount and paying no part of the bonus and not affected pecuniarily thereby, the transaction is not an usurious one."

The headnote to *Gleason* v. *Childs*, 52 Vt. 421, which reflects the opinion of the court, is as follows:

"Plaintiff owed E. and E. owed defendant. E. applied to plaintiff for payment, to get funds to pay defendant, but agreed that, if plaintiff would procure defendant to wait, he would also wait. Plaintiff saw defendant, who agreed to wait, if plaintiff would pay him extra interest, which plaintiff paid. Held, not interest on a debt due from plaintiff to defendant, and not usurious."

It is, however, argued by appellants that, by reason of the language of our statute, the Legislature not only intended to protect the borrower, as do the statutes of many other states, but that the legislative intent was also to penalize the lender by providing for the forfeiture of not only the interest but of the debt itself, and also by making the lender contracting for the usurious interest guilty ■

of a misdemeanor. Granting that the language of the statute is drastic, nevertheless the primary purpose and object of the law remains. That object, as agreed by all the courts under statutes as comprehensive as is ours, is not the punishment of the lender but the protection of the borrower. That conceded purpose of the Legislature, as stated by the Supreme Court of Wisconsin, enters into, and to a very large extent controls, the interpretation of the statutes, and the courts have so been influenced in the construction of these laws. It is true that it is the duty of courts to enforce the plain intent of the statute when the parties entitled to the benefit of the statute ask for its protection. Courts do not, however, and ought not, so interpret a legislative act that the property of one citizen is forfeited and lost to another, unless the plain and unequivocal mandate of the Legislature admits of no other rational construction. It is shown by the testimony in this case, and was so found by the court, that the contributions of stock were made voluntarily by parties holding large blocks of stock in the corporation and without any request or suggestion on the part of the corporation as such. The court found, and the testimony supports the finding, that it was in the minds of the contributors of this stock that they expected and hoped to receive a personal benefit not only from the loan made to the corporation but by reason of having the respondent connected with the corporation as a stockholder. The expectation or hope of the stockholders contributing is clearly apparent from the testimony of Mr. King, one of the contributors.

The parties here are in a court of equity. The trial court, as appears from a memorandum decision found in the record, was apparently of the opinion that the arrangement or agreement whereby the stockholders contributed this stock to the respondent was an independent and disconnected transaction from the giving of the mortgage to secure the indebtedness evidenced by the notes. The court was also of opinion that the contributing stockholders were influenced by the consideration that they expected a personal benefit to result to themselves as owners of large

blocks of stock by obtaining this loan from the respondent and by having the respondent who was a resident of New York City, connected with the corporation as a stockholder. There is testimony to support that view of the trial court. The interveners here parted with no part of their stock in the corporation to obtain this loan. No stock was taken from the treasury in which they might have an interest and given to respondent, and it is a little difficult to conceive why they should be heard in a court of equity to interpose a defense of usury with its drastic consequences where, as here, the principal debtor, the mortgagor corporation, does not interpose that defense, and where it has not requested the interveners to make such defense.

Considering the plea made by the interveners, whether they be treated as strangers to the mortgage contract or whether they be treated as properly here pleading a defense to which the mortgagor corporation might be entitled, in view of the facts and under the authorities, quoted, we are of the opinion that the judgment of the trial court should be affirmed.

There are other issues of fact upon which the trial court made findings and other legal questions discussed in the various briefs of counsel, but, having arrived at the conclusion that the interveners have no standing in a court of equity to be heard upon the defense of usury we find it unnecessary to discuss the other questions presented.

Judgment affirmed, with costs.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.