# SEABOARD FINANCE CO. v. WAHLEN et al.

No. 7890.   Decided July 7, 1953.   (260 P. 2d 556.)

530

See 58 C. J. S. Money Lenders, sec. 6. Usury, elements of. 55 Am. Jur., Usury, sec. 12; 105 A.L.R. 796.

*Howard N. Jones* and *Eksayn Anderson*, Salt Lake City, for appellant.

*Richard C. Dibblee,* Salt Lake City, for respondents.

*Arthur H. Nielsen* and *B. R. Parkinson,* Salt Lake City, amicus curiae.

CROCKETT, Justice.

At pre-trial the lower court rendered summary judgment of dismissal against the plaintiff on the ground that the loan upon which this action was brought was usurious. Plaintiff appeals.

The facts shown were: Plaintiff, a foreign corporation, duly qualified to make loans under our Industrial Loan Act,[1] on July 2, 1951 received an application from defendants for a loan "in an amount sufficient so they would get $1,000.00 in cash." They were given the $1,000. To this sum the plaintiff added $20 for insurance, $27.57 for an investigation fee, plus $330.81 for interest, making a total of $1378.38, for which defendants executed a note payable in 24 equal monthly installments of $57.44, and also signed a chattel mortgage as security therefor.

Defendants paid only $58 as the August payment and nothing further. On October 2, 1951 plaintiff brought this action on the note, to foreclose the chattel mortgage, and also asked for attorneys' fees.

The general usury statute limits the maximum interest on loans over $100 to 10% per annum, "except as otherwise provided by law."[2] The rate allowed industrial loan companies is such an exception.

The Industrial Loan Act grants to industrial loan corporations power:

"(1) To loan money * * * and to deduct interest thereon in advance at the rate of one per cent * * * of the face of such loan per month, and, in addition, to require payment in uniform weekly, semimonthly

---

[1] 7-6-3, U.C.A.1943, now 7-8-3, U.C.A.1953.
[2] 44-0-2, U.C.A.1943, now 15-1-2, U.C.A.1953 (1953 Supp.).

or monthly installments, with or without an allowance of interest on such installments, and to charge * * * a maximum fee of two per cent * * * for expense in * * * investigating * * * the borrower * * *."

Defendants contend that the basis for figuring the interest and charges allowed by the above statutes must be the amount they received, i. e. $1,000 cash, plus $20 in value for insurance coverage, which would make the computation as follows:

| | |
|---|---|
| Principal | $1,000.00 |
| Insurance | 20.00 |
| 24 (months) x 1% x $1,000 | 240.00 |
| 2% investigation fee | 20.00 |
| | $1,280.00 |

Counter to this plaintiff maintains that because the statute permits the lender to:

"* * * deduct interest * * * *in advance* at the rate of one per cent * * * of the face of such loan per month * * *" (italics added)

it was authorized to make the face of the note sufficient to pay all of the interest and charges in advance, and figure the interest plus investigating fee, totaling 26%, upon the gross amount, computed thus:

| | |
|---|---|
| Principal | $1,000.00 |
| Insurance | 20.00 |
| 24 (months) x 1% x $1,378.38 | 330.81 |
| (total of loan) | |
| 2% inv. fee x $1,378.38 | 27.57 |
| Total | $1,378.38 |

The question is posed, whether the basis for applying the interest and charges allowed by the above statute is

the amount of money and value actually received by the borrower ($1020) or that amount plus all of the interest and charges ($1378.38).

We first survey the arguments favoring defendants' position.

The ordinarily accepted meaning of interest is that it is compensation which one pays for the use of money he has borrowed for his own use.[3] Obviously, one cannot use another's money after he has repaid it ■ and it is no longer in his possession. As this statute is here applied by the plaintiff, it is plain that interest is charged for money that is not in the possession or use of the borrower.

Ignoring mathematical niceties, the principal is demonstrated thus: A borrower takes $100 to be repaid in ten $10 monthly installments; there is deducted interest on the total face of the loan at 1% per month for each month of the entire period, total-$10. So he receives $90, but he has this $90 in his possession only during the first month. After he pays his first payment, during the second month of the loan period, he has in his possession only $80 but he has paid interest for the use of the full $100 during that month; after the second payment, he has in his possession during the third month, only $70.00 but he has paid interest for the use of the full $100; and so on down until in the final month, when he has only 1/10th of the money left in his possession for his use, he still has been required to pay interest on the entire sum for that month. And he has paid it a year in advance without any interest in the money he has thus advanced being credited to him. Thus in the tenth month he has paid, not 1% per month, but 10% per month, or at the rate of 120% per year on the money actually in his hands.

[3] 30 Am. Jur. 6.

Using smaller payments over a longer period shows the picture even more cogently. One borrowing $100 to be paid in twenty $5 monthly payments, at the last month would have paid back $95, leaving only $5.00 in his possession for use. In such instance, charging him interest for the final month for the use of the full $100 would make the interest rate on money he is actually using 20% per month, or 240% per year. The longer the period for repayment of the loan, and the smaller the payment, the more exaggerated the interest rate during the terminal months becomes.

The application of the principle becomes even clearer if some chattel or property other than money is used for illustration. Suppose one hired 12 trucks at the rate of $10 per month each for their use; that the lender required the use be paid for a year in advance and that one truck be returned each month. During the second month the borrower would be using only 11 trucks but paying for 12; the third month using only 10 trucks but paying for 12; and so on down until the final month when he would still be paying the full $120 fee for the use of 12 trucks, but only using 1 of them.

It is thus plain that where the interest is deducted or paid in advance on the full amount of the original loan that the borrower only has on the average in his possession for use during the period of the loan about 50% of the money upon which he is required to pay interest. This means that the interest rate is actually approximately double that named as the interest rate of the loan.

Under the arrangement with the plaintiff, defendants here would have had in their possession of the average, during the period of the loan, only about one-half of the amount of money they originally received ($1,000) and considerably less than one-half of the total face of the note ($1,378.38) so the interest rate of 37 plus percent,

ostensibly for two years, actually amounts to more than 37 plus per cent per year on the amount of money the borrower has in his possession.

An argument which is at least plausible and which would avoid the imposition of the exorbitant interest rate is the approach that instead of interpreting the phrase "the face of the loan" to mean the original total of the loan, it should be interpreted to mean the balance due on the loan at any given time, that is, the amount which an examination of the face of the note at any given time would reveal as the amount then outstanding on the loan. This would result in interest being charged only on the money actually in the hands of the borrower. It is suggested that such is the reasonable and fair application of the statute. It should be here noted, however, that the phrase in question, "the face of the loan," usually means the principal thereof.[4]

It is urged that the legislature did not intend to permit any such excessive rate of interest as plaintiff has contrived to charge because of comparison with interest rates allowed by other exceptions to the general usury statute. Under the Small Loan Act[5] where loans are limited to $300, the maximum interest permitted is 3% per month, but chargeable only upon the *deferred balance* of a loan, which amounts only to 36% per year on the money the borrower actually has in hand for use. A newly enacted statutory provision [6] relating to conditional sales contracts permits the charging of 1% per month of the "unpaid balance," as defined in the act, to be *added* to the "unpaid balance."

It will be noted that *adding* the interest to the principal of the contract, results in interest being charged on such

---

[4] See 35 C.J.S. p. 382.

[5] 7-10-13, U.C.A.1953.

[6] 15-1-2a B (3), U.C.A.1953.

principal only, whereas the "deduction of interest in advance" permits the interest to be first added to the principal of the loan, so that interest is then figured on both the money advanced as well as upon the interest, as plaintiff did.

It is said that the exceptions to the General Usury Statute allowed under the Small Loan Act and the conditional sales enactment just referred to are justified because of the risk and the large amount of detail and book work required in the handling of such credit transactions. In contrast to this, under the Industrial Loan Act, there is no limit to the amounts that may be loaned and such reason for an excessive interest rate does not exist, although as has been indicated, the interest rate actually charged is higher. Defendants argue that the legislature cannot reasonably be supposed to have intended any such result. It must be conceded that there does not appear to be any justifiable reason for this anomolous situation.

The foregoing arguments in favor of defendants' position are not without merit. However, because of the antecedent statutory and case law of this state, and other reasons hereinafter stated, we are not at liberty to consider this cause upon its merits as if it were a matter of first impression.

In *People's Finance & Thrift Co.* v. *Varney,*[7] this court construed the predecessor of the present statute which has undergone only slight changes (hereinafter noted) since. A Miss Varney evidently applied for a loan of $200 from the plaintiff loan company; there was deducted therefrom $20 interest and a $2 service charge in advance; she received $178 and signed a note for $200 to be paid in ten monthly installments of $20 each. She resisted suit on the ground of usury, claiming that she would be required to pay more than the 12% per annum (now 1% per month), mentioned in the statute, since as succeeding in-

[7] 75 Utah 355, 285 P. 304.

stallments were paid, less of the borrowed money would be in her hands for her use, arguing that interest should be calculated on the basis that the borrower had the use of $200 for one month, $180 for the second month, $160 for the third and so on—the same argument set out in the foregoing portion of this opinion.

This contention was directly met and answered by Mr. Justice Straup, speaking for the court as follows:

"* * * the 1925 statute expressly provides that an industrial loan company * * * is authorized to deduct in advance interest on the loan at the rate of 12 per cent. per annum, and 'in addition, to require uniform weekly, semi-monthly, or monthly installments.' When therefore the company deducted 12 per cent. per annum as it did on the face of the note, as interest in advance for the 10-month period on the loan, it but did what the statute expressly authorized such a company to do. The interest deducted was $20, which is the interest on $200 for a period of ten months at the rate of 12 per cent. per annum. When the company 'in addition' required the loan to be paid in monthly installments of $20 each, it again but did what the statute expressly permitted such a company to do. Such, we think, is not only the reasonable, but the necessary, meaning to be given the statute. We do not see wherein it in such respect is doubtful or uncertain."[8]

Defendants do not directly assail the holding of the Varney case but seek to distinguish it from the instant one saying that

"the amount originally requested by the defendant [Varney] and the face of the note is identical, while in the case at bar the amount requested by the defendants and the face of the note is not identical."

The burden of their argument is that because the defendants requested a loan of $1,000 that such is the amount upon which the interest and investigating fee must be calculated, implying that if a loan of $1378.38 had been requested, the interest and charges could be figured on that amount and deducted therefrom. It is plain that this is but

[8]75 Utah at page 360, 285 P. at page 305.

a distinction in fact without any essential difference in principle. Whether Miss Varney asked for a loan of $200, or for $178, is of no import. The latter amount is what she got. The $22 interest and fee was deducted from her loan, which totaled $200.

If defendants' argument were sound it would follow that if a man asked for a loan of $200 and received $178, the interest would be figured on $200; but if he asked for a loan of net $178, and received such sum signing a note for $200, interest would be computed only on the $178. It is obvious that no such variance in interest rate should depend on any magical formula as to the wording of the borrower's request for a loan. If it were so, one may rest assured that the borrower would always be required to ask for the larger amount. Further, conclusive against the defendants' contention on this point is the fact that that is just what was done in the instant case. The stipulation at pre-trial was that defendants

"applied * * * for a loan in an amount sufficient to give them net cash proceeds of $1,000, which was to be repaid within 24 months."

That was the net amount they received and the charges and interest were added to it and they were figured upon the gross amount thus arrived at, just as in the Varney case.

The holding of the Varney case that under the Industrial Loan Act interest could be based upon the total of the loan (the principal plus the interest) for the entire period and deducted in advance, has stood since March 1927. It construed Chap. 116, Laws of Utah 1925. The Legislature of 1927 amended the statute by inserting the provision "with or without an allowance of interest on such installments."[9] This was undoubtedly done to meet this situation: If a substantial amount of interest is paid in advance, as in the instant case, the loan company receives this payment be-

[9]Laws of Utah, 1927, p. 72.

fore the use of the money occurs. That is, the borrower pays at the beginning for the use of the money for all 24 months of the loan and the lender receives his pay for the use of the money before such service is rendered; for instance, he gets paid for use of the money for the last month a full two years in advance. Hence, in some states the lender is required to credit the borrower with an offset for the interest he thus pays in advance.[10] The purpose of the amendment just referred to was undoubtedly to eliminate any question of the necessity of the loan company allowing such credit in this state. Plaintiff's position is that this amendment is consistent with the Varney case and with its interpretation of the statute. It is difficult to ascribe any meaning to it except in accord with the contention of the plaintiff that the lender is given the express privilege of receiving the monthly payments without crediting the borrower with interest on such payments.

This same statute was again re-enacted in 1945,[11] the only change being an addition of a proviso that the 2% investigating fee could be assessed only once each six months.

It therefore appears that 26 years and 13 general sessions of the legislature have gone by since the Varney decision interpreting the statute, yet the legislature has not seen fit to make any change in the law, as therein established. In reliance thereon the plaintiff and other industrial loan companies have issued thousands of loans running into many hundreds of thousands of dollars.

The authorities universally recognize that usury involves some degree of mala fides. As we said in *Cobb* v. *Hartenstein*[12] "A contract, to be usurious, must be so at the time made" and it is essential that "a corrupt or unlawful intent to violate the usury law, at least on the part of the lender" be proved to render the contract

---

[10]Rem.Rev.Stat.Wash. § 3862-8; Wis. Stat.1951 § 115.09 (7) (b).
[11]Laws of Utah, 1945, ch. 73 § 1.
[12]47 Utah 174, 152 P. 424; *Smith* v. *Parsons*, 55 Minn. 520, 526, 57 N.W. 311.

usurious. It is undoubted that because of the fact that holding a contract to be usurious involves the application of a penalty which will deprive a party of his property this will not be done lightly, nor unless it is plainly manifest that the lender intended to charge a rate of interest which is clearly usurious. This does not dispute the principle that one who knowingly charges interest at a usurious rate will be presumed to intend the natural and probable consequences of his act and be held to suffer the consequences.[13] But if under the facts and the law two reasonable constructions are possible, by one of which the contract will be legal, while by the other it will be usurious and invalid, the court will not find the corrupt intent necessary to establish usury and invoke the penalty thereof.[14] As this court observed in the case of *Rospigliosi* v. *Glenallen Mining Co.*[15]:

"Courts do not * * * and ought not, so interpret a legislative act that the property of one citizen is forfeited and lost to another, unless the plain and unequivocal mandate of the Legislature admits of no other rational construction."

There is no question but that the plaintiff, Seaboard Finance Company, has practically "squeezed to the last drop" all of the interest and charges possible to recover under the statute. And there is always the straw that breaks the camel's back. If the insurance premium charged was exacted under compulsion, as an additional burden prerequisite to the granting of the loan, that might under some circumstances violate the statute and render the note invalid. No such contention is made by the defendants here, and they stipulated that they got "value received" in insurance for the $20.

It is entirely possible that the Industrial Loan Act was sold to the legislature and passed by them as a 1% per month act and not unlikely that its language was devised by

[13]See 22 C.J.S., Criminal Law, § 35, p. 93.
[14]See Note 13 supra.
[15]69 Utah 41, 252 P. 276, 279.

representatives of loan companies for the very purpose of charging a much greater rate of interest. ■ It may well be that the legislature of this state would not deliberately approve the charging of 37% per annum on the amount the borrower actually has in use, particularly in view of the comparison with the lesser rates allowed under Small Loan and the Installment Sales Finance Acts. Nevertheless, it is the prerogative of the legislature and not of the courts to prescribe the rules as to usury. It is our function to interpret and apply, but not to question the wisdom of legislation. We can with judicial propriety call attention to situations which may appear to them to be unreasonable, inconsistent or undesirable so that due consideration may be given thereto and a remedy provided if deemed advisable by that body.

For the reasons hereinbefore delineated, we are constrained to hold that the instant loan does not partake of such a usurious nature as to render it invalid and uncollectible. Reluctant as the court may be to give ■ sanction to this law which has resulted in charging what seems to be a wholly unconscionable rate of interest, it would be even more so to resort to distortion of the language of the statute and the legal principles bearing upon this controversy to bring about defeat of the plaintiff's recovery.

Since the determination of certain of the issues, other than that of usury, require the taking of evidence, this action is remanded to the trial court for further proceedings consistent with this opinion.

Costs to appellant (plaintiff).

WOLFE, Chief Justice (concurring).

I concur except for those statements in the majority opinion censuring the plaintiff and charging that its practices are morally wrong. Arthur H. Ham, for many years Dir-

ector of Division of Remedial Loans of Russell Sage Foundation and an authority on the small loan business has, in his miscellaneous pamphlets, demonstrated that only those loan companies such as the Provident Loan Company of New York City with large capital loaned in small sums can do business at a cost of under 3 per cent a month. The plaintiff, as well as other finance companies licensed and regulated by the state, is engaged in a legitimate and necessary business. While the interest which it charged the defendants may on the surface seem high, it was clearly within the charge permitted by statute. The Legislature took into consideration these factors when it established the maximum rates. Long before Remedial Loan statutes were passed in Utah more than one Legislature had before it the data as to the cost of investigating and losses sustained by companies engaged in carrying on the small loan business on the various levels of capital employed without the security of chattels or real estate but on the security of personal sureties only. Knowing nothing of the earnings of the plaintiff or other finance companies, I cannot say that their charges are "unconscionable", nor do I think their conduct can be properly classified as a "scheme."

McDONOUGH, Justice (concurring).

I concur in the opinion of the court, but likewise concur in the observations of Mr. Chief Justice WOLFE concerning statements made in the opinion, which statements, however, in no way color its rationale.

WADE, Justice (concurring).

I concur. About the only benefit that can result from this litigation is that certain vicious results from the statutes on usury may be pointed out to the legislature for consideration in the future. I think it appropriate to call attention to some such results not emphasized in the prevailing opinion.

The usury statutes of our state provide a harsh remedy for their violation by providing that the lender shall lose not only the excessive interest charged, but all of the principal loaned. The only possible justification for such a harsh remedy is based on the theory that such lender has driven an unconscionable bargain, and the courts have been reluctant to find a violation has occurred where the facts do not clearly require such a finding. Too often the result of this situation is that the person who drives an unconscionable bargain stays technically within the law, but the person who has done nothing unfair finds that he has made a technical violation of the law and has to suffer the harsh penalty.[1] Sometimes persons who intend to traffic in collecting unfair rates for loans lobby statutes through the legislature which appear to be innocent but in actual practice tolerate unconscionable rates of interest. I wonder if it would not more nearly accomplish the purpose to abolish this harsh penalty and provide one which would not work a great hardship in case of violation and thereby remove the strict construction against finding a violation. This proposition should be carefully considered by the legislature.

There is another very vicious thing about this statute. It appears on its face to merely allow a charge of interest at the rate of one per cent per month or 12 per cent per annum over and above other charges. The average borrower legislator, lawyer, and judge who had not had occasion to figure the matter out, would be lead to believe that 12 per cent per annum was the top limit of the rate of interest chargeable under such statute, and we are shocked when we become conscious of the fact, as this case demonstrates, that under this statute the rate of interest may run as high as 37%. If the legislature was conscious of the fact that by enacting such a law they were permitting the collection of such a large percentage of interest, they would have been much more frank to say so in language which would convey that idea to everyone who reads the statute. This language

---

[1]See *Rossberg* v. *Holesapple*, 123 Utah 544, 260 P. 2d 563.

seems to me to be calculated to mislead and give the impression that the rate allowable is much lower than it actually is. It is hard for me to believe that a legislature which deliberately enacted a statute which allows such an exorbitant rate of interest would feel that any good would be accomplished by any usury law. It seems to me to be highly inconsistent to prohibit a man from charging more than 10 per cent interest on a loan to his neighbor or business acquaintance, but at the same time allow a finance company to charge 37 per cent for same loan.

HENRIOD, Justice, concurs in result.